No. 13,486.

WEGHORST ET AL. *v.* COUNTY FIRE INSURANCE COMPANY.
(45 P. [2d] 625)

Decided May 13, 1935.

Mr. OMER T. MALLORY, for plaintiffs in error.

Mr. S. M. TRUE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

WEGHORST, and other plaintiffs, filed suit to recover for a loss under a fire insurance policy, issued by the defendant, County Fire Insurance Company. To a judgment in favor of the insurance company, they assign error. Reference herein will be made to the parties as Weghorst, bank, and defendant insurance company.

Weghorst was the owner of a dwelling in Fort Morgan, Colorado—subject to mortgage to plaintiff bank—on which the insurance company issued a fire policy on February 5, 1929. On May 17, following, Weghorst obtained another policy for $1,500 in the Springfield Fire and Ma-

rine Insurance Company, a different company, on the same property. December 10, 1930, he filed a petition in bankruptcy, and by his schedules therein, claimed a homestead exemption right in the insured property. Adjudication as a bankrupt was had on December 28, 1930, and trustee appointed January 19, 1931. The claim for homestead right, subject to the indebtedness to plaintiff bank, was approved February 5, 1931. C. C. Rickel, an attorney at Fort Morgan, was the local agent for defendant insurance company, but not for the Springfield company. He, as attorney for Weghorst, filed the latter's petition in bankruptcy, and as such attorney, on December 13, 1930, came into possession of the Springfield policy, which he took to the bank, whereupon the bank applied to the local agent of the Springfield company for a standard mortgage clause, which was made a part of the policy, and the loss, if any, made payable to the bank. After this, and on February 5, 1931, Rickel, as agent for defendant insurance company, issued its second policy, covering the same property. This made three policies on the property. The third policy, in its loss payable clause, referred to the trustee in bankruptcy. Weghorst obtained employment at Trinidad, and vacated the property covered by the policies. When Rickel learned of this, he on May 23, 1931, endorsed vacancy permits upon the two policies with the defendant insurance company written by him, and took extra premiums for the vacancy hazard. Fire occurred August 13, following. An adjuster found the damage to be $1,271.84. The defendant insurance company, as well as the Springfield company, denied liability, and two suits were brought on all three policies. These suits, because of the same controlling facts and questions of law, were consolidated for trial; the suit against the Springfield Company resulted in a judgment against it, which is now before this court as case No. 13484, and we are asked to consider the cases together.

Weghorst, and other plaintiffs, contend that the defendant insurance company had notice of the bankruptcy by

reason of the reference to the trustee in bankruptcy in the loss payable clause, which put it on notice; that Rickel was not acting in such a dual capacity as agent for the insurance company and attorney for insured, as to prevent his knowledge being imputed to the insurance company; that two policies having been issued by defendant, insurance company—neither having an endorsement thereon permitting additional insurance—the issuance of two policies was a waiver of the provisions of said policies against the issuance of other insurance without notice.

The defendant insurance company contends here, as in the trial court, that Rickel, its agent, acted in a dual capacity, namely, as agent and attorney for Weghorst, and as agent for it; that he never communicated his knowledge of the bankruptcy proceedings to the insurance company; that he did not notify it of the issuance of its second policy; that the proceedings in bankruptcy operated as a change of title, prohibited by the terms of the policies; that the reference to the bankruptcy trustee in loss payable clause, in third policy, did not operate as notice to the company of the bankruptcy proceedings; that Rickel's knowledge was not imputable to the company, and that the words ''other insurance permitted,'' contained in the policy, do not abrogate the provisions of the policy requiring endorsement thereon, in the event insured procures other contracts of insurance.

It will appear in this case, No. 13486, that two policies issued by defendant company are involved, and the controversy centers itself around the following policy provisions:

''This entire Policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured has now or shall hereafter make or procure any other Contract of Insurance, whether valid or not, on the property covered in whole or in part by this Policy.

''Or if any change other than by the death of the insured take place in the interest, title, or possession of the subject of insurance (except change of occupants without

increasing of hazard) whether by legal process, or judgment, or by voluntary act of the insured, or otherwise.

"Or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The above provisions present four questions for consideration aptly enumerated by the trial court as follows: (1) Did the listing of the insured property as an asset, with claim of homestead exemption in the bankruptcy proceedings, operate as a change of title prohibited by the policy? (2)) Does the reference to "Trustee in bankruptcy" in the loss payable clause on the second policy, operate as notice to, or put the company upon inquiry? (3) Was the company agent, Rickel, acting in such a dual capacity as would prevent knowledge acquired by him from being imputed to the company; (4) Do the words "other insurance permitted" abrogate a following clause requiring endorsement of additional insurance upon the policy?

Our determination of question No. 1, also will dispose of question No. 2. That Weghorst was the owner in fee simple of the insured property and had occupied same with his family in such a manner as to entitle him to make homestead exemption claim is not disputed, neither is there any allegation of abandonment or proof of such. Under the circumstances, the right to the homestead exemption existed and vested in Weghorst. As to when he would assert this right, was for his determination. Title to the property reserved as Weghorst's exemption never vested in the trustee in bankruptcy, but the formality of appraisal and having same set apart to claimant was required. 7 C. J., p. 362, §641. Approval of this rule leads us to say, that such a change in title as prohibited by the terms of the policy did not take place. That being true, the reference to the trustee in bankruptcy, mentioned as question No. 2, is of no importance in this case.

As to question No. 3, which concerns the matter of the dual representation of Rickel, in the capacity of agent for the company and later as attorney for the insured in the bankruptcy proceedings, the trial court determined that the knowledge acquired by Rickel of the bankruptcy proceedings, in his capacity as attorney, was not imputable to the company. Since there was no change in title, as above mentioned, and no extra hazard involved thereby, nothing occurred involving the prohibition set out in the policy; therefore, had Rickel's acquired knowledge on this subject been actually conveyed to the company, it would have been of no consequence, and it follows that his failure to convey such knowledge did not injuriously nor adversely affect the interests of his principal, and would afford no ground for the defense herein made. The knowledge acquired by Rickel, as attorney for Weghorst, concerning the policy of insurance on the property involved secured by Weghorst in another company without notice to defendant insurance company or endorsement thereof on its policy, which is involved in this case, was not such as would come within the scope of his employment as agent. He had no interest therein adverse to his principal, neither did he conceal anything from, or practice any fraud upon, it.

Regardless of the question of dual capacity, the company, by its second policy, contracted to pay loss if any, to a trustee in bankruptcy and the bank. This policy was issued six months prior to the fire, and suggested a condition to the company, known to Rickel, its agent, who wrote the insurance and countersigned the policy. An occasion for inquiry was presented which if accepted could have disclosed all the facts, even the existence of the additional insurance in another company, upon which, if the hazard was increased, the company could then have canceled its risk. Not having availed itself of this opportunity of protection, it must abide the result of its failure therein.

There is nothing in the record to even slightly

indicate that Rickel was attempting to perpetrate a fraud on his principal, the company, or that he was personally interested adversely to it; neither do the circumstances raise a clear presumption that he had any reason for not performing his duty as such agent, or that he did not act in good faith toward his principal. He apparently was negligent, and for such negligence, the company must suffer. If he was negligent in the performance of some part of his ordinary duties with the company, whereby either the insured or the company was injured, then as between the two latter, the one responsible for placing him in a position where he could be negligent must shoulder the burden. It is to be presumed that an agent will convey all knowledge acquired to his principal. The rule, established in this as well as other jurisdictions, is, that the knowledge of the agent is knowledge of the principal, when the agent acts within the scope of his authority. It was within the scope of Rickel's authority to issue the second policy in defendant company. It was issued and the company assumed the risk. Rickel neglected to advise his principal of the existence of the other, or Springfield company policy; but when he was acting, though negligently, in the scope of his employment, without an adverse personal interest or under circumstances that would be clear that he would fail in his duty to his principal, then his knowledge was that of his principal. With this knowledge in its possession from February 5th to August 13th, without any action on its part, the company clearly is estopped to deny liability on the ground that the existence of the Springfield company policy was not endorsed on its policies, and it became liable under the provisions of its insurance contracts for such pro rata share of the loss as the amount of its policies bear to the total insurance. The two policies here involved are for $1,000 each, that of the Springfield company is for $1,500, making the total amount of insurance $3,500. Since the amount of the loss established was $1,271.84, judgment should have been entered against defendant

for twenty thirty-fifths of the loss. Judgment reversed with directions to enter judgment accordingly in favor of plaintiffs.

Mr. Justice Bouck concurs in the conclusion.

Mr. Justice Hilliard not participating.