[Civ. No. 31132.   Second Dist., Div. One.   June 30, 1967.]

PAUL A. ROBLEDO, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Robert W. D'Angelo and Clarence Hansen for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, John A. Daly, Assistant City Attorney, George J. Franscell and William B. Burge, Deputy City Attorneys, for Defendants and Respondents.

WOOD, P. J.—In this action for damages for personal injuries resulting from a gunshot wound, judgment upon a verdict was in favor of the defendants. Plaintiff appeals from the judgment.

Appellant contends that the court erred in not giving his requested instructions on the doctrine of conditional res ipsa loquitur; and that certain comments made by defendants' counsel in his argument to the jury constituted prejudicial misconduct.

On November 28, 1963 (Thanksgiving Day), about 6 p.m., while the plaintiff and his friends, Prospero Lucero and Miguel Vasquez, and several other persons were in a bar at the Alexandria Hotel in Los Angeles, Howard Green, a Negro, came there and began using and shouting profanity at everyone. When the bartender asked Green to leave the premises, Green struck the bartender in the face with his fist and then while those two persons were struggling and fighting, Vasquez and another man tried to help the bartender. While those persons were continuing to fight they went out the door and

upon the sidewalk on Fifth Street in front of the bar. Then plaintiff and Lucero also went to the sidewalk, and a kind of battle or fight was going on among three or four persons, and a crowd started to gather around them. Green then had a knife and was "slashing" at the crowd. At that time Officers Hubbard and Watts, who were in a police car which was traveling west on Fifth Street near the hotel, saw Green "slashing" at the crowd. The police car stopped at the scene of the commotion, and Officer Watts, who was in uniform, got out of the car and told Green to drop the knife. Green then turned toward the officer, who was about three feet from him, and tried to slash the officer with the knife—the knife missed the officer's throat approximately six inches. The officer stepped back, drew his revolver, and fired it at Green who was facing the officer and was about three feet from the gun. The bullet struck plaintiff in the stomach. The bullet had not ricocheted before striking plaintiff.

The evidence was conflicting with reference to the position of plaintiff, in relation to the positions of the officer and Green, at the time the bullet struck plaintiff and immediately prior thereto.

Plaintiff testified in part as follows: He went into the bar with Lucero and Vasquez for the purpose of making a telephone call to find out whether he might bring Vasquez home to a Thanksgiving dinner. After telephoning, he returned to the place where Lucero and Vasquez had been sitting and he heard a commotion by the door where a colored man (Green) was fighting the bartender. Green and the bartender went out the door, followed by a group of persons, including Lucero and Vasquez. Lucero had a beer bottle in his hand. Plaintiff, after following Lucero out the door, saw "this trouble" among Green, the bartender, and Vasquez, on the sidewalk under the canvas canopy near the entrance to the hotel. A crowd gathered and plaintiff walked toward the crowd to see what was happening. He heard someone say: "Look out. That man has a knife." Green was struggling with Vasquez and other persons in the crowd. Plaintiff was about 8 feet from Green. A police car pulled up to the curb in front of the entrance to the hotel, and a man in uniform got out of the car and fired a gun without giving any warning. Then plaintiff felt a sharp pain in his stomach, and he staggered and lost consciousness. He had no recollection as to how long he had been outside the bar because "things happened so fast" and were "so confused." He was standing on the sidewalk about

8 feet from Green when the bullet hit him. He did not move toward Green or attempt to push him. He did not fight with Green at any time, and he did not jump toward Green to aid the officer.

Miguel Vasquez testified in part that he was in the bar when Green hit the bartender; he and another man tried to help the bartender; while he was struggling with Green outside the bar, he grabbed Green's wrists and held him near a wall; at that time he heard a shot; and he did not hear the officer give any warning before the shot.

Prospero Lucero testified in part as follows: After Green hit the bartender (when they were in the bar), they went outside and continued fighting. He (witness), with a beer bottle in his hand, went outside under the canopy to see what was happening. A crowd gathered on the sidewalk. When he saw a knife in Green's hand, he shouted to the bartender: "Look out. He has got a knife." Green then "charged" him (witness), and he hit Green on the side of the neck with the beer bottle. About that time, the police car pulled to the curb, and one of the officers (Watts) jumped out with a gun in his hand. He (witness) shouted a warning that Green had a knife, and the officer fired a shot. He heard plaintiff scream: "I have been shot." He (witness) had not seen plaintiff on the sidewalk before the shooting.

Joseph A. Johnston testified in part as follows: He was a patron in the bar when Green created the disturbance. After Green and two or three persons had gone out to the sidewalk, he (witness) went out another door of the bar. When he was outside he heard a shot. He did not see anyone running toward or pushing Green when he heard the shot. After the shooting, plaintiff was lying on the sidewalk about 20 feet from the corner of Fifth and Spring Streets, and Green was about 3 or 4 feet from that corner.

Two physicians testified that they had treated defendant for abdominal wounds. Plaintiff's employer testified that he had employed plaintiff for more than two years and that plaintiff's attendance at his employment was very good. (There was evidence that as a proximate result of the wounds, plaintiff incurred expenses as follows: hospital, exceeding $10,000; doctors, exceeding $3,000; incidental medical expenses, exceeding $1,000; and estimated loss of earnings, exceeding $12,000.)

Officer Watts testified in substance as follows: While he and Officer Hubbard were in a patrol car on Fifth Street he saw

an altercation on the sidewalk in front of the Alexandria Hotel. He pulled the car to the curb and parked it. There was a group of people on the sidewalk—the people were facing a Negro man (Green). One of the men in the group was using a newspaper rack as a shield against Green, and another man had a beer bottle. When he stopped the car, someone shouted: "Look out. He has got a knife." He (officer) got out of the car and, at a distance of approximately 12 feet from Green, he shouted: "Drop the knife." As he started toward the sidewalk, he again shouted: "Drop the knife." Green backed up and he (officer) again shouted: "Drop the knife." Green, who was then about 3 feet from him, turned around and slashed at his (officer's) throat with the knife. The knife missed his throat about 6 inches. He (officer) "threw myself [himself] back or stepped back," drew his revolver, and fired one shot at Green, aiming at Green's chest. When he fired the shot, plaintiff, who had been standing near the wall, approached Green at an angle, hit Green on the shoulder, knocked Green away, and received the shot. When he fired the shot he was in a "semicombat draw" stance and he "wasn't on balance." (In another portion of his testimony he testified that he was not off balance.) When he fired the shot his gun was closer than 3 feet to Green's body because his (officer's) arm was extended—he did not know how far his arm was extended. When he drew the gun, he looked to ascertain whether any bystanders would be in jeopardy, and he did not see anyone within 4 feet of Green. He drew and fired the gun "in one split second motion." After plaintiff had been shot, plaintiff said: "Why did you shoot me? I was only trying to help you." (Plaintiff, on cross-examination, testified that he could not recall having made that statement.)

Officer Hubbard testified in substance as follows: While he and Officer Watts were in the police car on Fifth Street, he saw a Negro man (Green) facing a crowd on the sidewalk. Green was making slashing movements with his hand in the direction of the crowd. One of the men in the crowd was using a newspaper rack as a shield. They (officers) stopped and he heard someone yell: "He has got a knife." Officer Watts got out of the car and shouted: "Drop the knife." He (witness) got out and went behind the car; Officer Watts again shouted: "Drop the knife." Green then turned toward Officer Watts and made a "whirling motion" with his right hand in the direction of Officer Watts' neck. Officer Watts and Green

were on the sidewalk about 2 feet apart. A man (plaintiff) then rushed from the group of people toward Green, struck Green, and moved him slightly "to the east." At that time he (witness) heard a shot fired. The man (plaintiff) then went toward the wall of the hotel, "dropped to the ground," and got up again "in a matter of seconds." He (witness) went to the man (plaintiff), looked at him, and called an ambulance.

Defendants' witnesses, in addition to Officers Watts and Hubbard, were four other officers. Officer Ianone testified that when he had a conversation with plaintiff at the hospital on the day after the shooting, the plaintiff appeared to be in pain but was conscious. In that conversation the plaintiff said: That when Lucero arose from the table and went after Green, he (plaintiff) ran after Lucero to dissuade him from entering the fracas; he (plaintiff) saw a knife in Green's hand and saw Green lunge toward Lucero; he also saw Green attempt to stab Officer Watts, and he (plaintiff) ran behind Green intending to grab Green's right arm and disarm him; at that moment Officer Watts drew his revolver and fired; he (plaintiff) thought he was in a more advantageous position than the officer was in, and he believed he could take the knife away to prevent Green from stabbing the officer.

Officer Pearse testified that he had a conversation with Vasquez at the police building after the shooting; in that conversation, Vasquez made statements to the effect that when Green had a knife in his hand and was trying to cut the bartender, the "four of us" ran up to Green and struggled with him; and when the police arrived, plaintiff "ran after" Green "to get the knife from him." Officer Pearse also testified that, after the conversation, Vasquez signed a document which included the substance of the conversation.

Officer Gonzalez testified that, after the shooting, he had a conversation with Vasquez (partly in Spanish and partly in English) at the police station, wherein Vasquez said: That on the sidewalk the colored man (Green) "pulled" a knife and was "moving around" with a knife in his hand; Vasquez grabbed Green's hand which held the knife, and he was holding Green's hand when the police car arrived and when the shot was fired; Vasquez did not know where plaintiff was when the shot was fired; and no persons were standing behind Green when the shot was fired.

Officer Neilson testified that, after the shooting, he had a conversation with Lucero at the police station, wherein Lucero said in substance that after Green had charged the bartender

with a knife, Green charged Lucero, and that he (Lucero) in self-defense struck Green on the neck with the beer bottle which he had in his hand.

Plaintiff requested that the court give two instructions on the doctrine of conditional res ipsa loquitur, which instructions were 206-A (revised)[1] and 206 (revised)[2] of Book of Approved Jury Instructions (BAJI). The request was denied. Among the instructions given, there were five instructions, requested by defendant, relating to the force which an officer may use in effecting an arrest and in self-defense.

In his argument to the jury defendant's counsel made comments to the effect that plaintiff was technically a member of a *"posse comitatus"* and as such member he could recover Workmen's Compensation, including the right to have the city pay all of his medical expenses and "medical disability," if warranted; and that plaintiff could also file a com-

---

[1]206-A. (Revised)

"One of the questions for you to decide in this case is whether the accident [injury] involved occurred under the following circumstances:

"First, that it is the kind of accident [injury] which ordinarily does not occur in the absence of someone's negligence;

"Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant [originally, and which was not mishandled or otherwise changed after defendant relinquished control]; and

"Third, that the accident [injury] was not due to any voluntary action or contribution on the part of the plaintiff.

"If, and only in the event that you should find all these conditions to exist, you are instructed as follows."

[2]206. (Revised), as modified.

"From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident was caused by a faliure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence, the evidence must the defendant must present evidence to show either (1) a satisfactory explanation of the accident, that is, a definite cause for the accident, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue."

plaint with the state based upon his having received injuries while acting in the defense of a police officer.

Appellant contends that the court erred in not giving his requested instructions on the doctrine of conditional res ipsa loquitur; and that the comments made by defendant's counsel in his argument to the jury constituted prejudicial misconduct.

■ ''The doctrine of res ipsa loquitur may be applicable, in an action for injuries caused by the discharge of a firearm.'' (53 Cal.Jur.2d, Weapons, § 34, p. 147. See *Jensen* v. *Minard,* 44 Cal.2d 325, 329 [282 P.2d 7]; 94 C.J.S., Weapons, § 29, subd. d, p. 530; 46 A.L.R.2d 1212; 140 A.L.R. 410.)

■ ''Before the doctrine may be applied, however, the following requisite conditions must be met: (a) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (b) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (c) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'' (*Roddiscraft, Inc.* v. *Skelton Logging Co.,* 212 Cal.App.2d 784, 793 [28 Cal.Rptr. 277]; see *Ybarra* v. *Spangard,* 25 Cal. 2d 486, 489 [154 P.2d 687]; Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 260, p. 222.)

■ ''Where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present.'' (*Seneris* v. *Haas,* 45 Cal.2d 811, 826-827 [291 P.2d 915, 53 A.L.R.2d 124]; *Baker* v. *B. F. Goodrich Co.,* 115 Cal.App.2d 221, 229 [252 P.2d 24]; see *Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* p. 794.) ''The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities [citation]. The inference of negligence is not required to be an exclusive or compelling one. . . . The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved [citations].'' (*Seneris* v. *Haas, supra,* p. 827; see *Hansen* v. *Matich Corp.,* 234 Cal.App.2d 129, 133 [44 Cal. Rptr. 149].)

In the present case the plaintiff does not contend that the doctrine of res ipsa loquitur is applicable as a matter of law. The instructions proffered by him are those which have been sometimes referred to as conditional or qualified instructions on res ipsa loquitur. In the *Roddiscraft* case, *supra,* there was a similar legal situation regarding the giving of such instructions. It was said therein (pp. 794-795) : ''The plaintiffs do not here contend that the doctrine is applicable as a matter of law; nor do they assert that any of the aforementioned conditions exists as a matter of law. The instructions proffered by them are those which have been sometimes referred to as the 'qualified' instructions on res ipsa loquitur. These instructions consist of a preliminary instruction in the form of BAJI No. 206-A (revised), which directs the jury that it must first decide whether the fire in question occurred under circumstances in which *all* of the three conditions above specified are present, followed by the direction that if, and only in the event that they should find *all* these conditions to exist, they are instructed (in the form of BAJI No. 206 (revised)) that from the happening of the fire involved in this case an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. This latter instruction then goes on to define the effect of the inference, thus stating, in said instruction, the rule of res ipsa loquitur.'' (Cf. *McFarland* v. *Booker,* 250 Cal.App.2d 402, 413 [58 Cal.Rptr. 417], wherein it was said that an unconditional res ipsa loquitur instruction was refused properly.)

In the present case, the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, and it was caused by an instrumentality within the exclusive control of the defendant officer. There was a conflict in the evidence as to whether the accident was due to contributive action by plaintiff. ''In determining whether or not the evidence supports the theory of the requested instructions we must view the evidence in the light most favorable to the party offering the instructions.'' (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* p. 795.) In the present case the respondents assert that under the evidence ''reasonable minds could not differ and therefore the determination as to the applicability of res ipsa loquitur became a question of law'' and the court properly refused to give these instructions. (Citing *Gray* v. *City & County of San Francisco,* 202 Cal. App.2d 319 [20 Cal.Rptr. 894].)

According to the testimony of Officers Watts and

294

Hubbard, plaintiff moved toward Green and struck Green while Officer Watts drew and fired his revolver. According to the testimony of plaintiff and the other eyewitnesses, plaintiff did not move toward Green and was not near him when the revolver was fired. Officer Watts testified that when Green slashed at him with the knife and missed his throat approximately six inches, he (officer) threw himself back, drew his revolver, aimed it at Green's chest, and fired it "in one split second motion" with his arm extended or partly extended while he was off balance. There was a substantial conflict in the evidence as to material issues, and it is apparent that reasonable persons might draw different inferences as to the balance of probabilities regarding such issues. The evidence was sufficient to permit the jury, under proper instructions, to determine whether the conditions necessary for the applicability of the doctrine of res ipsa loquitur were present. The court erred in not giving plaintiff's requested instructions on the doctrine of conditional res ipsa loquitur.

As above stated, a further contention of appellant is that certain comments made by defendants' counsel in his argument to the jury constituted prejudicial misconduct. Those comments were as follows: "Now, there are two things, ladies and gentlemen. When we come here we say this: there are many ways this problem could be approached and truthfully a man was shot whom the officer really never intended to shoot. We could say, 'Well, Mr. Robledo is technically a member of a *posse comitatus*'—common law expression. As such, he becomes a policeman. Therefore, if Officer Watts had been injured, he'd be entitled to the same thing, Workmen's Compensation, city to pay all his medical expenses and even the medical disability if it warranted it. Another procedure would be this new one: to file a complaint with the state where the man claims he is coming in defense of a policeman and he is injured but he didn't choose either one of these." That argument assumed facts, regarding compensation, which were not in evidence and invited the jury to speculate as to unsupported inferences and legal theories that other remedies were available to plaintiff. (See *Malkasian* v. *Irwin*, 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 294 P.2d 822]; *Ferrario* v. *Conyes*, 19 Cal.App.2d 58, 61 [64 P.2d 975].) The argument constituted prejudicial misconduct. Defendants (respondents) assert, however, that plaintiff's counsel made no objection at the time defense counsel referred to the possibility of obtaining Workmen's Compensation, and consequently plaintiff waived

an objection to the reference to Workmen's Compensation. Defendants assert further that plaintiff only objected to the reference in the argument to a state procedure for filing a complaint (on a claim that he was coming to the defense of a policeman and was injured). The reporter's transcript shows that immediately after defense counsel made the above quoted argument one of the counsel for plaintiff said: "Just a second, your Honor, I object. There's no evidence that was available to us. That is a new law and that will prejudice the jury. My client had no such right." The judge did not rule upon, nor make any statement regarding, the objection. Presumably, defendants' assertion that plaintiff objected only to the reference to a state procedure for filing a complaint (and not to the reference to Workmen's Compensation) is based upon the statements which plaintiff's counsel made in connection with his objection. (Those statements, as above shown, were to the effect that there was no evidence "that" was available to us, that is a new law and that will prejudice the jury, and his client had no such right.) Although such statements apparently referred to the second of the alleged two additional remedies for compensation suggested by defendants' counsel (namely, a state procedure for filing a complaint), it is to be noted (1) that, at the beginning of the above-quoted argument, defendants' counsel said there were "two things" or ways to approach the problem (first, the *posse comitatus* theory for Workmen's Compensation; and secondly, a state procedure upon a claim for aiding a policeman), and (2) that, at the end of such argument, he said that plaintiff "didn't choose either one of these" suggested alternative remedies for compensation. Immediately thereafter, plaintiff's counsel said: "Just a second, your Honor, I object." Under such circumstances, it cannot be said that plaintiff waived an objection to the part of the argument regarding Workmen's Compensation. It is apparent that he objected to the argument wherein counsel for defendants was suggesting contingent other remedies whereby plaintiff might be compensated. Defendants cite *Riolfo* v. *Market Street Ry. Co.*, 78 Cal.App.2d 385, 388 [177 P.2d 753], wherein it was held that a failure to object to comments in argument constituted a waiver of an objection to the comments. That case is not applicable herein, since it appears that in the present case the plaintiff did object.

Defendants assert further to the effect that the judge, by denying the motion for a new trial, found that such comments

were not prejudicial, and the finding is controlling on appeal unless there is no reasonable basis for the finding. In support of that assertion they cite *Brown* v. *McCuan,* 56 Cal.App.2d 35 [132 P.2d 838], wherein defense counsel had referred to other compensation allegedly available to the plaintiff, and wherein it was held that such reference did not justify a reversal of the judgment for the defendant. It was said therein (p. 41) : ''The trial judge [upon a motion for a new trial] is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision. The trial judge's determination must also be considered to be an adjudication of counsel's good faith.'' That cited case is distinguishable factually from the present case. In the cited case the plaintiff (appellant) put before the jury the fact that a compensation insurance company was involved; and defendant's counsel, in his argument to the jury, referred to compensation insurance ''in order to cast doubt on the integrity of the appellant's witnesses; he also argued that Mr. Brown could go before the Industrial Accident Commission. . . .'' Also in that case, the plaintiff ''objected,'' and the court instructed the jury to disregard everything not in evidence. In the present case, there was no evidence regarding Workmen's Compensation, or regarding asserted liability of the state; and, as above stated, counsel for defendant in making said comments in his argument to the jury assumed facts not in evidence. Also in the present case, the trial judge did not rule upon plaintiff's objection or make any statement regarding it. The denial of the motion for a new trial was not a conclusive determination, controlling on appeal, with respect to the issue of prejudicial misconduct.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 27, 1967.