495 P.2d 558 (1972)
Alexander THIELE, Plaintiff-Appellee,
v.
The STATE of Colorado, Defendant-Appellant.
No. 70-563.
Colorado Court of Appeals, Div. II.
March 28, 1972.
*559 Mellman, Mellman & Thorn, P. C., Bernard H. Thorn, Denver, for plaintiff-appellee.
Duke W. Dunbar, Atty. Gen., Joseph M. Montano, Chief Highway Counsel, Richard W. Phillips, Deputy Chief Highway Counsel, Denver, for defendant-appellant.
Selected for Official Publication.
DWYER, Judge.
Alexander Thiele, the plaintiff, brought this negligence action against the State of Colorado to recover damages for the injuries he sustained when he was wounded by a Colorado State Patrolman.
This suit was authorized by an Act of the Colorado General Assembly, which granted plaintiff the right to bring a civil action "for alleged damages due to personal injuries sustained and medical expenses incurred, for the purpose of determining whether such damages were due to the alleged negligent acts of the state of Colorado, or any of its departments, boards, officers, agents, or employees . . . ." Colo. Sess.Laws 1968, Ch. 21, § 1.
Trial was to the court. After the plaintiff had completed the presentation of his evidence, the defendant moved for a dismissal. The court denied the motion, and defendant rested without presenting any evidence. The court found for the plaintiff, assessed his damages at $177,483, and entered judgment. The amount of the judgment is not in issue on this appeal.
The issue presented by this appeal is whether there is evidence in the record to support the findings of fact and conclusions of law entered by the trial court. More specifically, the defendant contends that there is insufficient evidence to support the trial court's finding that the plaintiff's injury was caused by the patrolman's negligent use and discharge of his revolver.
On February 3, 1966, a Colorado Highway Patrolman stopped an automobile on Highway 34, east of Akron, Colorado, for a defective taillight. Plaintiff was a passenger in this car which was driven by a Mr. Carron. Carron did not have a valid driver's license, and plaintiff gave him his license before the officer reached the car. The officer asked for Carron's driver's license, and Carron gave him plaintiff's license. The officer then asked a series of *560 questions concerning the license and a bill of sale tendered as evidence of ownership of the car. The officer became suspicious of the pair because of their erroneous answers to his questions. The officer returned to his patrol car, called his headquarters on the radio, and asked for information about the car he had stopped. He was informed that plaintiff and Carron were wanted by law enforcement authorities, and he was instructed to take the pair into custody.
The patrolman returned to the car with his revolver drawn and ordered the occupants out of the car. He warned them not to move or he would shoot and instructed the pair to face the car and lean upon it with their hands on top. The officer searched plaintiff and Carron and found that they were unarmed. The officer then proceeded to handcuff Carron. The officer was standing behind Carron. Plaintiff was standing to the right of Carron and the officer. Plaintiff was facing the car with his hands on top. The officer was using his right hand to put the handcuffs on Carron, and during this process, the officer held his revolver in his left hand pointed at the plaintiff. While handcuffing Carron, the revolver was discharged, and the plaintiff was wounded.
The testimony of the plaintiff, Carron, and the highway patrolman concerning the foregoing facts was not in conflict. However, the highway patrolman's version of the shooting differed from that of the plaintiff and Carron. The officer testified that the plaintiff turned towards him just after he had finished handcuffing Carron and that because of this movement he intentionally shot the plaintiff in self defense. Both the plaintiff and Carron testified that the plaintiff did not move away from the car prior to the time he was shot.
Plaintiff called an expert medical witness, and his testimony tended to discredit the officer's version of the shooting and to corroborate plaintiff's version. The expert testified that the bullet passed through the rear portion of plaintiff's rib cage and severed his spinal cord at the eleventh thoracic vertebra. He stated that this wound could not have been inflicted if the plaintiff had turned towards the officer, but it could have been inflicted in the manner described by plaintiff.
The court found on the basis of conflicting testimony that "the officer, throughout the episode and up to the time he fired the gun, wounding the victim, had said gun cocked." Two experts who had examined the patrolman's revolver testified that in a cocked or single action position the revolver could be discharged by a light trigger pull of two and one-quarter pounds. A trigger pull of eight and one-half pounds was required to discharge the revolver in the uncocked or double action position. The testimony of the experts established that the revolver in the cocked position was extremely dangerous.
From the testimony of the witnesses and the facts and circumstances in evidence, two reasonable conclusions could be reached: (1) that the plaintiff's injury was caused by the intentional discharge of the revolver; or, (2) that the injury was caused by the negligent discharge of the revolver. The trial court resolved the conflicts in the evidence in plaintiff's favor and found that the patrolman was negligent in holding a cocked revolver with a light trigger pull in his hand, pointed at plaintiff, while handcuffing Carron. The credibility of the witnesses, the sufficiency, probative effect, and weight of all the evidence, and the inferences and conclusions to be drawn therefrom, were all within the province of the trial court whose conclusions will not be disturbed on review unless so clearly erroneous as to find no support in the record. Adler v. Adler, 167 Colo. 145, 445 P.2d 906; Hipps v. Hennig, 167 Colo. 358, 447 P.2d 700. A court's finding based upon a choice between two plausible views of the weight of the evidence or upon a choice between conflicting inferences from the evidence is not clearly erroneous. McSorley's, Inc., v. United States, 10 Cir., 323 F.2d 900.
*561 The defendant argues that the trial court's finding of negligence is against the weight of the evidence and erroneous because there is no testimony directly contradicting the patrolman's statement that he deliberately shot the plaintiff. However, a court, as the trier of fact, is not bound to accept the testimony of a witness as establishing the truth of the facts to which such testimony is directed even though it is not contradicted by other direct evidence. United Brotherhood of Carpenters and Joiners v. Salter, 114 Colo. 513, 167 P.2d 954; Ward v. Atkinson, 22 Colo.App. 134, 123 P. 120. Reasonable inferences from circumstances tending to discredit or weaken such testimony should be considered. Swanson v. Martin, 120 Colo. 361, 209 P.2d 917. In the present case, it was within the province of the trial court to disregard the officer's testimony and to decide the factual issues on the basis of other evidence in the case.
The defendant also contends that, even if the evidence is considered most favorably to the plaintiff, the evidence establishes only that an accident happened and that the evidence is therefore insufficient to support the court's finding of negligence. Although it is true that the mere happening of an accident or the occurrence of an injury raises no presumption of negligence, it is equally true that negligence may be established by the facts and circumstances surrounding that accident. Remley v. Newton, 147 Colo. 401, 364 P.2d 581. The facts and circumstances in this record support the trial court's finding of negligence.
The defendant also contends that if the patrolman committed any tort, it was one of assault and battery, and, thus, plaintiff cannot recover because he was authorized to bring an action for negligence only. In support of this proposition, the defendant cites the cases of Alaniz v. United States, 10 Cir., 257 F.2d 108; Lewis v. United States, 3 Cir., 194 F.2d 689; and Nichols v. United States, D.C., 236 F.Supp. 260.
These cases are distinguishable. In each case a federal employee intentionally shot a firearm at or in the direction of the plaintiff. It was held in each case that the injured plaintiff could not maintain an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. This Act authorizes certain suits against the federal government for personal injuries caused by the negligence of an employee of the government, but the Act by its express terms does not apply to any claim arising out of an assault and battery. The rationale of these cases is that an injury inflicted by the intentional discharge of a firearm constitutes an assault and battery, and such a cause of action is not one subject to judicial cognizance under the Act. In cases where the claim arose from the unintentional discharge of a federal employee's weapon, the federal courts have allowed recovery under the Act. In Tastor v. United States, D.C., 124 F.Supp. 548, the court permitted a plaintiff wounded by an officer to recover on the basis of a finding that the officer "was negligent in the manner in which he handled the gun after it was drawn."
The state courts generally hold that an officer who fails to use reasonable care in handling his weapon during the course of an arrest is negligent. See City of Charleston ex rel. Peck v. Dawson, 90 W. Va. 150, 110 S.E. 551; Meistinsky v. City of New York, 285 App.Div. 1153, 140 N. Y.S.2d 212; Piatkowski v. State of New York, 43 Misc.2d 424, 251 N.Y.S.2d 354; and Robledo v. City of Los Angeles, 252 Cal.App.2d 285, 60 Cal.Rptr. 328.
Judgment affirmed.
COYTE and PIERCE, JJ., concur.