539 P.2d 1333 (1975)
JIM ARNOTT, INC., et al., Plaintiffs-Appellees,
v.
L & E, INC., and Pittsburgh National Mortgage Corporation, Defendants-Appellants and Cross-Appellees, and
Wilkins Company, Inc., Defendant-Appellee, and
John Ten Eyck, Defendant-Appellee and Cross-Appellant, and
P P G Industries, Inc., Intervenor-Appellee.
No. 74-469.
Colorado Court of Appeals, Div. III.
June 17, 1975.
Rehearing Denied July 22, 1975.
*1335 Wood, Ris & Hames, P. C., William K. Ris, Denver, for defendant-appellee.
Ellison, de Marino & Knapp, William H. Knapp, Denver, Robert Dunlap, Colorado Springs, for defendant-appellee and cross-appellant.
Horn, Anderson & Johnson, R. E. Anderson, Colorado Springs, for plaintiffs-appellees and intervenor-appellee.
Donald E. La Mora, Colorado Springs, for defendants-appellants and cross-appellees.
Not Selected for Official Publication.
RULAND, Judge.
In an action to foreclose mechanics' liens against a newly erected motel, the owner, defendant L & E, Inc., appeals from a judgment in favor of the principal contractor, Wilkins Company, Inc., on Wilkins' claim against L & E, as well as a judgment for a subcontractor, PPG Industries, Inc. L & E also appeals from a judgment disallowing part of its claim against defendant John Ten Eyck, the architect. Ten Eyck cross-appeals from part of the judgment against him on the claim of L & E. We affirm in part, modify and reverse in part, and remand the cause for further proceedings.
L & E engaged Ten Eyck to design and prepare the necessary plans and specifications for construction of three buildings containing a 104-unit motel and other facilities in conformity with the Sheraton Inn, Inc., franchise requirements. Upon completion of the plans and specifications, Wilkins was engaged as the principal contractor to erect the motel.
Disputes arose between these parties during the course of construction with the result that L & E refused to make substantial payments claimed due by both Wilkins and Ten Eyck. Since Wilkins was in default on payments due plaintiffs-appellees as subcontractors, the subcontractors filed mechanics' liens against L & E's property and then initiated the present action against Wilkins for the amount due for performance of their subcontracts, and against L & E (and defendant Pittsburgh National Mortgage Corporation as mortgagee of the property), to establish priority of the various liens. Wilkins, having also filed its lien, cross-claimed against L & E for the balance alleged due on its contract and for work outside the contract. L & E answered Wilkins' claim and asserted a cross-claim against Wilkins for breach of contract. L & E also asserted a claim against Ten Eyck for negligence in design of the structure; Ten Eyck denied liability for negligence and cross-claimed against L & E for payment of architectural fees.
Following a lengthy trial to the court, it awarded judgment against Wilkins on the claims of the subcontractors. Based upon extensive findings of fact and conclusions of law, it determined that Wilkins had substantially performed its contract and awarded judgment in the amount of $144,215, representing the balance due on the contract less offsets for replacement of concrete and other minor defects in the work performed. The court also awarded Wilkins judgment in the amount of $13,591 as the reasonable value of work performed by it which was not included in the contract.
*1336 The trial court awarded L & E judgment in the amount of $22,587 on its claim against Ten Eyck for negligent design of the motel kitchen and $2,471.50 for failure to assist in planning water softeners in the design of the water system for the motel. The trial court offset against this claim the balance which it determined due for services rendered by Ten Eyck in the amount of $19,193.79. This appeal followed.

I. Appeal On Issues Between L & E And Wilkins
L & E first contends that the trial court erred in determining that Wilkins had substantially performed its contract. While conceding that pursuant to the construction contract, Ten Eyck submitted certificates of substantial completion to L & E on buildings 1 and 2 in September of 1972 and on building 3 in October of 1972, L & E relies on evidence to the effect that: No attempt was made to balance the mechanical systems until December 1972; repairs to heating units were not completed until June 1973; not all of the minor defects enumerated in a "punch list" prepared by L & E were corrected; certain improperly poured concrete and allegedly defective windows were never replaced; the water pressure in the buildings was inadequate; and the certificate of consent to payment by Wilkins' surety was not issued until March 1973. In addition, L & E complains that Wilkins was obligated under its contract to assure that no liens were filed against the property by subcontractors, and such liens were filed.
If it appears that a contractor has substantially performed his contract, then he is entitled to the contract price, less an offset for the cost to remedy the deficiencies. The purpose of the doctrine of substantial performance is to avoid injustice where a building contractor has performed all major aspects of the construction and the owner seeks to avoid payment for inconsequential defects in the work. See Louthan v. Carson, 63 Colo. 473, 168 P. 656. Whether substantial completion of a construction contract has occurred is a question of fact. Little Thompson Water Assn. v. Strawn, 171 Colo. 295, 466 P.2d 915. Hence, the sufficiency, probative effect, and weight of all the evidence relative to this issue, as well as the inferences and conclusions to be drawn therefrom, rest within the province of the trial court and its conclusions may not be disturbed unless so clearly erroneous as to find no support in the record. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537; Thiele v. State, 30 Colo.App. 491, 495 P.2d 558.
Pursuant to his contractually authorized authority, Ten Eyck issued certificates of substantial completion but L & E refused to make final payment to Wilkins. All defects of which L & E now complains were determined by the trial court not to be the responsibility of Wilkins or were rectified prior to trial with the exception of alleged defects in some of the windows, replacement of some concrete which was improperly poured, and certain other minor defects in construction reflected by a "punch list." The construction price for erection of the buildings under the contract was $1,447,500, and the trial court awarded offsets to L & E for defects in the construction of only $4,310. Our review of the record does not indicate that failure to cure some of the defects until after certificates of substantial completion were issued materially interfered with L & E's use of the premises. In fact, the county building department issued an occupancy permit for all buildings on September 16, 1972, and L & E rented the first room upon issuance of the permit. Hence, we find no error in the trial court's ruling on this issue, and since L & E wrongfully withheld substantial payment due Wilkins, L & E may not assert violation of contract provisions relating to payment of subcontractors and obtaining consent to payment by the surety as a defense to a claim for substantial performance.
*1337 L & E next contends that the award of damages to it for improper installation of concrete was inadequate. We disagree.
L & E presented testimony to the effect that the concrete in various areas outside the buildings and certain concrete in the floor of one of the main buildings was improperly poured with resulting damages in excess of $50,000. Wilkins presented evidence to show that all concrete was installed in compliance with the contract except for approximately 95 lineal feet of curbing and approximately one-half of the concrete surrounding the swimming pool. On this conflicting evidence, the court determined that the 95 feet of curbing and all of the concrete surrounding the swimming pool should be replaced. There being evidence to support the trial court's finding on this issue, it may not be set aside on appeal. Thiele v. State, supra.
L & E next asserts that the trial court erred in awarding Wilkins $13,591.84 as the reasonable value of extra work not covered by the contract because it included therein a 10 percent markup for overhead and profit based on the cost of labor and materials supplied as well as compensation to a superintendent for supervising the extra work. In support of this contention, L & E contends that the parties agreed only that L & E would pay direct costs of labor and materials incurred in these endeavors. The evidence offered by Wilkins on this issue was to the effect that the parties discussed payment of direct labor and material costs. In connection therewith, a representative of Wilkins informed L & E it was company policy to charge a "markup" for extra work, and a representative of L & E replied he was not "worried" and that this would be resolved at the proper time. On the basis of this evidence, the trial court properly concluded that the agreement for extra work must be treated as a promise by L & E to pay the reasonable value of same. See Grau v. Mitchell, 156 Colo. 111, 397 P.2d 488. There was evidence that it was customary in the construction industry in such situations to charge a percentage markup for overhead and labor. Absent a showing by L & E that any of the extra work was defective, the trial court properly determined that the reasonable value of the work was represented by the amount customarily charged therefor. See Moncrief v. Hall, 63 So.2d 640 (Fla.). Finally, since the written contract required Wilkins to have a superintendent on the job at all times to supervise the work thereunder, it was not error for the trial court to include compensation for that superintendent in supervising the work not covered by the contract as a labor cost in determining reasonable value of the work.

II. Appeal By L & E On Its Claim Against Wilkins & PPG
Following initiation of the present case by plaintiffs-appellees, PPG requested and was granted leave to intervene. It asserted a claim against Wilkins for the unpaid balance due for purchase and installation of windows in the amount of $3,432.84. Wilkins filed a cross-claim seeking recovery against PPG for any damages awarded against Wilkins on L & E's claim, but L & E did not file any cross-claim against PPG.
In its pretrial statement, L & E denied that PPG had substantially completed its contract. L & E also claimed that PPG was responsible for defective installation of various windows "which items are encompassed in the claim of L & E, Inc., against Wilkins." Following the pre-trial conference, the trial court entered a pretrial order which specified as one of the issues "[the] workmanship as to the work performed by all of the subcontractors except as to Jim Arnott, Inc., and A & P Steel, Inc."
Pursuant to the pre-trial order, evidence was presented by L & E tending to show that some of the windows were either defective or had been improperly installed. Counsel for Wilkins objected to this evidence on the basis that some of the testimony appeared to relate to defects in the *1338 windows which appeared after the one-year time period specified in the contract during which Wilkins was responsible for correcting defects. The trial court permitted all evidence relative to the defective glass to be presented, and the contract was introduced in evidence.
Thereafter a representative of PPG testified relative to the indebtedness owed it as well as installation of the windows generally. The representative further testified relative to PPG's warranty and possible coverage for defective windows thereunder.
In its findings, the trial court acknowledged that considerable evidence was presented concerning the windows. However, since a breach of warranty had not been asserted against PPG by way of cross-claim, the trial court concluded that this issue was not before it. The trial court also concluded that should the claim of L & E for breach of warranty not be satisfied by PPG following trial, then L & E was free to litigate this claim for breach of warranty in a separate action. Without specifying its reasons, the trial court also concluded that Wilkins could not be liable even if this issue was in the case as to Wilkins.
L & E asserts that both rulings were erroneous since the issue was sufficiently stated in the pre-trial order and, even if not, L & E contends that it was tried by implied consent of the parties pursuant to C.R.C.P. 15(b).
We conclude that the trial court's ruling was correct as to the claim which L & E now asserts against PPG. Since L & E filed no cross-claim against PPG, it specifically limited the issue of defective windows to a claim against Wilkins. Hence, we find no basis for concluding that PPG was aware that this was asserted as an issue in the case, and thus it was not tried by express or implied consent as to it. See Barnes v. Wright, 123 Colo. 462, 231 P.2d 794; Haffke v. Linker, 30 Colo.App. 76, 489 P.2d 1047.
We agree with L & E that the issue was before the court in conjunction with its claim of offset against the amount owed Wilkins. The contract specifically provides that Wilkins warrants all of the work to be free of defects in materials and workmanship. We also conclude that the one-year limitation period contained in the contract was properly presented as part of the issue tried by implied consent when counsel for Wilkins objected on this basis. Hence, the case must be remanded for additional findings on the following: Whether L & E has satisfied its burden of showing that the defects of which it complains resulted from defects in the windows or in their installation; which of such defects occurred within the one-year period specified by the contract; the amount of damages due L & E, if any, by way of offset to the amount awarded Wilkins; and what amount, if any, Wilkins is entitled to recover from PPG.

III. Appeal By L & E On Its Claim Against Ten Eyck
L & E contends that the trial the court erred in not awarding it damages for alleged negligence of Ten Eyck in designing downspouts for the building.
Relative to the downspouts, L & E relies on evidence that, during construction, an independent engineer employed by L & E to review the work performed advised an agent of Ten Eyck that the downspouts might freeze. Wilkins thereafter corresponded with Ten Eyck and L & E advising that it would not be responsible for damage occasioned by freezing cycles. Freezing did occur in the downspouts with the result that water escaped into various rooms causing damage both to the carpeting and resultant loss of income from inability to rent the rooms. An agent for Ten Eyck testified that during construction loose connections were discovered in one of the downspouts, thus raising an inference that this type of defect might be responsible for the freezing.
*1339 Based on the foregoing, the trial court concluded that the only explanation for the water escaping into the rooms was freezing in the downspouts. However, the trial court also found that there was no showing of negligence on the part of Ten Eyck. The trial court finally concluded that to prove its claim, L & E would have to present evidence showing negligent design by Ten Eyck from another architect who qualified as an expert.
We do not reach the issue of whether expert evidence was necessary to substantiate L & E's claim of negligence. The trial court obviously was not satisfied that the water leaked as a result of the design of the downspouts rather than from some other defect besides design. L & E had the burden of proof on this issue, and the trial court's determination that its evidence failed to satisfy this burden is binding on review even if this court might have reached a different conclusion based on the evidence. See Linley v. Hanson, 173 Colo. 239, 477 P.2d 453; Adler v. Adler, 167 Colo. 145, 445 P.2d 906.
L & E further asserts that Ten Eyck was negligent in recommending that balancing of the mechanical systems be conducted by Wilkins, in recommending revisions in lighting fixtures, and that the damages awarded to it against Ten Eyck for redesign of the kitchen unit were inadequate.
Each of these contentions of error presented issues for resolution solely by the trier of fact. As to each, we have examined the record and it contains sufficient evidence to support the rulings of the trial court, and accordingly we affirm those rulings. Linley v. Hanson, supra; Thiele v. State, supra.

IV. Appeal Of L & E And Cross-Appeal Of Ten Eyck As To Damages Awarded For Installation Of Water Softeners
The trial court determined that Ten Eyck was negligent in not originally providing for water softeners in his design of the motel complex since the complex was not serviced by a municipal water system as Ten Eyck had originally contemplated and represented to L & E. The trial court also found that Ten Eyck was negligent in not assisting in the design of the water softeners installed in each building, and concluded that the softeners were responsible for the decrease in pressure in the plumbing system. On the basis of these findings, the trial court awarded L & E the sum of $2,471.50 as the anticipated cost to install water softeners of increased size.
L & E contends that the award is inadequate because it does not include the total cost incurred by it in installing the inadequate softeners for which it contends Ten Eyck is responsible because these were not included in his plans for the complex. Ten Eyck contends that the award is unsupported by the evidence and relies on testimony to the effect that water softeners were responsible only for a decrease in pressure in one building and not in the other two. We disagree with both contentions.
In answer to L & E's contention, while an architect may be liable for underestimated total cost of a project resulting from his failure to include all items necessary to construct the project, it must appear that the error was substantial before he is liable for the increased costs of the project. See Kellogg v. Pizza Oven, Inc., 157 Colo. 295, 402 P.2d 633. The total cost of the water softeners was approximately $8,000 and when compared to the total cost of the project, it is not a substantial error such as to require application of the damage rule set forth in Kellogg.
Relative to Ten Eyck's contention, our review of the record reflects that while one witness concluded that the decrease in water pressure due to installation of water softeners occurred only in one building, another witness who was responsible for installing the softeners believed that the decrease in water pressure in all of the *1340 buildings was attributable to the water softeners. The trial court's resolution of this conflicting evidence is binding on this appeal. Thiele v. State, supra.
We have examined L & E's other allegations of error as to its claim against Ten Eyck and find them to be without merit.

V. Cross-Appeal Of Ten Eyck As To Damages Awarded L & E For Redesign Of The Kitchen
Ten Eyck contends that the damages awarded L & E for redesign of the kitchen exceed the damages shown by the evidence. We agree.
The trial court based its award on the total cost in the amount of $22,587 as shown by an exhibit referred to by the parties as Change Order No. 6. However, that change order covered both revisions to the kitchen as well as the lounge and coatroom. Witnesses verified that the breakdown shown on the change order was accurate as to revisions made in the kitchen, lounge, and coatroom. The trial court made no finding that Ten Eyck was negligent in making revisions to the coatroom and lounge. Hence, it appears the trial court misappreheneded the information contained on Change Order No. 6. Therefore, the amount of damages awarded should be reduced from $22,587 to $20,161 in conformity with that change order. See Brewer v. Williams, 147 Colo. 146, 362 P. 2d 1033.

VI. L & E's Appeal As To The Award Of Interest
L & E contends that the trial court erred in awarding interest to Wilkins and the subcontractors from December 19, 1972, on their respective claims. We do not consider L & E's contentions relative to the judgments awarded all subcontractors (except portions of the judgments for Berwick Electric Co. and U. S. Engineering Co., which were entered against L & E) since these judgments are against Wilkins and not against L & E.
Relative to the judgment in favor of Wilkins, we are unable to ascertain from the trial court's findings and the parties are unable to advise us why the date of December 19, 1972, was selected. In any event, L & E contends that interest should run from the date of judgment since Wilkins' claim was unliquidated. We disagree.
In a claim for payment pursuant to a contract, the fact that the amount due thereunder is disputed does not render the claim unliquidated for the purpose of awarding interest pursuant to § 5-12-102, C.R.S.1973 (1971 Perm.Supp., C.R.S.1963, XX-XX-XXX). See Florence & Cripple Creek Railroad Co. v. Tennant, 32 Colo. 71, 75 P. 410. When, as here, it appears that the contractor has sustained his claim for payment based upon substantial performance of a construction contract, we hold that interest should be calculated on the amount awarded from the date the trial court determines that the contract was substantially performed. See York Plumbing & Heating Co. v. Groussman Investment Co., 166 Colo. 382, 443 P.2d 986; Idaho Gold Coin Mining & Milling Co. v. Colorado Iron Works Co., 49 Colo. 66, 111 P. 553. On this issue, the trial court must now determine on what date the contract was substantially performed.
We agree with L & E that the award to Wilkins for work outside the contract does not bear interest until the date of judgment because this claim is founded in quantum meruit. Hunter v. Wilson, 147 Colo. 36, 362 P.2d 553. Hence, the judgment must be modified to commence interest on this claim from the date of judgment.
We find no merit to L & E's contention that the claims of Berwick and U. S. Engineering *1341 against it are unliquidated. It is not disputed that these claims covered work outside the subcontracts and was done at the request of L & E. The work was billed by invoice and thus interest runs from the date that the claims were payable. Donley v. Bailey, 48 Colo. 373, 110 P. 65. Relative to U. S. Engineering, it appears that the account was payable prior to December 19, 1972, and L & E may not complain because the trial court did not award interest until December 19, 1972. Relative to Berwick, the invoice introduced in evidence in support of its claim reflects that the account was payable on January 10, 1973. Hence, the judgment must be modified to commence interest from that date instead of December 19, 1972.

VII. Disposition
(1) That portion of the judgment determining that Wilkins did not breach its contract in supplying or installing windows in the motel is reversed and the cause remanded for additional proceedings consistent with the views above expressed.
(2) The trial court is directed to modify its judgment awarding damages against Ten Eyck for negligent design of the motel kitchen by reducing the award from $22,587 to $20,161.
(3) The trial court is directed to modify its judgment to award interest to Wilkins on the amount due under the contract from the date the trial court determines that Wilkins substantially performed the contract, to award interest to Wilkins for extra work done outside the contract from the date the original judgment was entered, and to award interest to Berwick on its claim from January 10, 1973.
(4) In all other respects, the judgment is affirmed.
VanCISE and STERNBERG, JJ., concur.