**WEST DENVER FEED CO., a corporation, et al., Plaintiffs-Appellees,**

v.

**Darrel W. IRELAND, Defendant-Appellant.**

**No. 75–704.**

Colorado Court of Appeals,
Div. I.

June 17, 1976.

As Modified June 22, 1976.

Brenman, Sobol & Baum, Martin Zerobnick, Denver, for plaintiffs-appellees.

Spurgeon, Aman & Hanes, Gregory R. Piche', Colorado Springs, for defendant-appellant.

VanCISE, Judge.

Plaintiffs, in separate claims, obtained judgments in a trial to the court for goods allegedly sold and delivered to the defendant, Darrel W. Ireland. Ireland appeals and we reverse.

The evidence shows that in January of 1971 Ireland acquired a Colorado Springs

business known as "George Pet Supply Shop." Ireland continued the business in that same trade name with one George Hall as general manager. On June 2, 1972, Hall and his wife bought the shop from Ireland on terms which included the Halls' assumption of the liabilities of the business, among them the accounts payable to plaintiff creditors. The provisions of the Uniform Commercial Code-Bulk Transfers Act, now § 4–6–101 et seq., C.R. S.1973, were not complied with by any party.

During the period of Ireland's ownership, Hall was authorized to and did purchase merchandise on credit from plaintiffs. After Hall's purchase, he operated the business under the same name, and each of the plaintiffs continued its account with the pet shop as before without closing the old account or opening a new account. Each of the accounts had a debit balance at the time of sale. After the sale, as before, purchases were made and the charges therefor were entered, payments were made and the credits were posted, and a running balance was maintained on each account.

Hall continued to operate the business as owner until he filed for bankruptcy in August 1973. At that time, there were sizeable debit balances in all three accounts.

Judgment was entered for creditors West Denver Feed (West Denver) and Western States Wholesale Aquarium & Pet Supplies (Western States) in the amount of these final debit balances (less certain service charges not at issue here). Judgment for creditor R. H. McElheney, Inc., (McElheney) was for the debit balance of January 17, 1973, the date McElheney admitted learning that Hall was the new owner, and no adjustment was made for payments made or charges incurred after that date. These judgments were entered against Ireland by the trial court on the theory that, inasmuch as the Bulk Transfers Act had not been complied with, as far as these creditors were concerned no sale took place, and therefore as to them Ireland continued to be the owner and was responsible for the charges incurred even after the sale.

■ On this appeal, the creditors admit that the Bulk Transfers Act has no effect on the outcome of this case. That Act, applicable to a business being sold, provides that if the transferor and transferee fail to comply with its provisions, the transfer is "ineffective" against any creditor of the transferor. Thus, under the Act, a creditor of the transferor may proceed against the transferee buyer to the extent of amounts owing *before* the bulk transfer up to the limit of the value of the property transferred or the amount paid therefor. Sections 4–6–104, 105 and 109, C.R.S.1973; and *see Official Comment* 2 to § 104, and *Moskowitz v. Michaels Artists & Engineering Supplies, Inc.,* 29 Colo. App. 44, 477 P.2d 465. However, in this action the creditors did not proceed against the bankrupt transferee. They sued the seller, and the Act does not add to or subtract from the remedies available to those creditors on their claims against the transferor.

■ Ireland's liability, if any, must depend on an agency relationship between Hall and Ireland. However, the evidence in the record establishes, and the court held, that as between Ireland and the Halls there was a sale on June 2, 1972. Hence, at that time, Hall's actual authority as agent for Ireland terminated and, absent some other basis, Ireland cannot be held liable for any purchases made by Hall following the sale.

The creditors contend that they had extended credit to the business originally and had dealt with Hall based on Ireland's being the owner and thus personally liable, and that they were entitled to assume that Hall continued as Ireland's agent because no notice was given to them of the transfer of the business.

■ "[A]s to a third person an agency in existence continue[s] until the third person has notice or knowledge of the ter-

mination of the agency." *Cascade Warehouse Co. v. Dyer*, 256 Or. 377, 471 P.2d 775; *see Thompson v. Machado*, 78 Cal. App.2d 870, 178 P.2d 838; 3 *Am.Jur.2d Agency* § 44. However, it is sufficient notice of such termination if the creditor learns, actually or constructively, that the former principal has ceased to do business or has transferred the enterprise to another. And notice to an agent of the creditor, when the agent is acting within the scope of his authority, is notice to the principal. *Weghorst v. County Fire Insurance Co.*, 96 Colo. 564, 45 P.2d 625; *see Merchants' Mutual Fire Insurance Co. v. Harris*, 51 Colo. 95, 116 P. 143; *Restatement (Second) of Agency* § 9(3).

■ The dealings between the pet shop and West Denver and Western States, both before and after the sale, were primarily through salesmen who regularly called at the shop and who dealt with Hall. Hall testified, and there was no testimony to the contrary, that in June 1972, shortly after the sale, Hall himself told the salesman for each that he was now the owner of the business. Their principals denied any knowledge of Hall's ownership prior to receiving a notice from the bankruptcy court. However, if Hall's testimony is accepted as true, failure of the salesmen to communicate their knowledge to their principals does not alter the legal consequence that any liability of Ireland to these creditors for purchases subsequent to the sale terminated as soon as the salesmen learned of the change of ownership.

■ The trial court, as the trier of the facts, is not bound to accept testimony of a witness as establishing the truth of facts to which such testimony is directed even though it is not contradicted by other direct evidence. *Thiele v. State*, 30 Colo. App. 491, 495 P.2d 558. Therefore, since the court made no finding as to whether or

when a salesman of West Denver or a salesman of Western States learned about Hall's becoming the owner of the pet shop, this cause must be remanded for such findings.

As to McElheney, the evidence of notice is in conflict, and that conflict was not resolved by any finding of the trial court. Mr. McElheney was the only person who dealt with the pet shop on behalf of his company. He maintained that he first learned of Hall's ownership in January 1973, and he, therefore, limited his claim to the balance due at that time. Hall's testimony was that he placed an order with McElheney over the phone in June 1972, told him about the change, and was informed by him that he already knew about it from another source. It is up to the finder of fact to determine whether McElheney first learned of the sale in June 1972 or January 1973.

■ Ireland is liable to each creditor only for the amount owing at the date of the sale of the business plus any purchases up to the time the creditor learned of the change of ownership, less all payments made on the accounts from the date of sale until the closing of the accounts. Where, as here, neither debtor nor creditor expressly mandates otherwise, payments on open accounts are applied in order of time to the earliest accrued and unpaid. *Ady & Crowe Mercantile Co. v. Howard*, 65 Colo. 272, 176 P. 328; *Mackey v. Fullerton*, 7 Colo. 556, 4 P. 1198.

The judgment is reversed, and the cause is remanded to the trial court with directions to make findings of fact as to the time each plaintiff creditor first learned of the change of ownership, and to enter judgment on each claim in accordance therewith as indicated in this opinion.

COYTE and KELLY, JJ., concur.