No. 18,902.

Robert F. Tucker, et al. *v.*
Karen Dixon, a Minor, etc.
(355 P. [2d] 79)

Decided September 6, 1960.

Mr. DUANE O. LITTELL, Mr. JAMES E. ALGEO, for plaintiffs in error.

Mr. H. W. SEAMAN, Mr. CONRAD L. BALL, for defendant in error.

*In Department.*

PER CURIAM.

THE parties appear here in reverse order of their appearance in the trial court. We will refer to them as they there appear, or by name.

Plaintiff, alleging negligence by defendants, commenced an action in the district court for damages for personal injuries sustained by plaintiff Karen Dixon, a minor, while swimming at a motel swimming pool owned and operated by defendants. Trial was to the court, resulting in a judgment for plaintiff in the amount of $5,000.00.

Defendants do not question the nature or extent of

Karen's injuries, nor the amount of damages awarded, but assert as grounds for reversal that: (1) by the standards of Section 343, Restatement of Torts, commonly referred to as "comparative knowledge test," the trial court erred in finding the defendants guilty of negligence; (2) defendants' acts were not the proximate cause of Karen's injuries; (3) that the trial court improperly excluded evidence; and (4) that plaintiff was guilty of contributory negligence.

The evidence reveals that on the morning of July 21, 1955, Karen, then 11 years of age, her mother, father and younger brother, registered as paying guests at defendants' motel. Almost immediately thereafter, Karen went swimming in the swimming pool. As she entered the pool, she observed three boys in the shallow end playing with an object, which they were throwing back and forth. A short time later, the boys left the pool, leaving the object in the water. The accident occurred when Karen surfaced in the pool after a dive and struck her mouth on the object thereby fracturing two of her upper front teeth. At no time prior to the accident did Karen have contact with the object, nor did she have any knowledge of its physical properties. This object was later determined to be a hard plastic float and is described as approximately fifteen (15) inches in length, cylindrical in shape, about three or four inches in diameter and very heavy for its size. It was identified as part of the cleaning equipment used by defendants in cleaning the swimming pool, which together with the rest of the cleaning equipment consisting of another float and a section of hose with a vacuum attachment, had been left lying near the pool by defendants or their employees after use in cleaning the pool. The floats were ordinarily attached to the vacuum hose by a cord and could be easily detached. At the trial the defendants admitted they made a practice of leaving the cleaning equipment near the pool when not in use, and that on at least two or three previous occasions the floats had been

detached and were later found in the water by defendants. There was evidence that one of the floats had been in the water the night before the accident. The identity of the person or persons who had detached the float from the hose is not shown by the record.

The trial court found that defendants were negligent in leaving the cleaning equipment near the pool where the float could be detached and put in the water; that defendants' negligence was the sole and proximate cause of Karen's injuries; that plaintiff was not guilty of contributory negligence; and that the appearance of the float, which was an unknown object to Karen and her parents, was such as did not place them or any other reasonably prudent guest or person, under like circumstances, on notice of its weight or possible danger from contact therewith when in the water.

Questions to be Determined.

First. *Did the trial court err in finding the defendants guilty of negligence?*

█ This question is answered in the negative. As stated in *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 342 P. (2d) 1006, a landowner is subject to liability for harm caused by a natural or artificial condition, if (a) he knows or by exercise of reasonable care, could discover the condition; (b) has no reason to believe that condition will be discovered; (c) invites entry upon the land without (1) making the conditions safe, or (2) giving a warning. The case quotes from Restatement of the Law of Torts, Sec. 343, p. 939, as follows:

"Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions."

The opinion then continues:

"Our cases also recognize that the landowner, in discharging his duty to a business visitor, is obligated to exercise reasonable care to *discover* perils. (Citations.) This duty of discovery is not satisfied by the simple ex-

pedient seemingly followed here of ignoring the hazard."

In the instant case, defendants admitted that Karen was a business visitor, or an invitee at the motel and to the swimming pool, but assert that plaintiff failed to prove notice, either actual or constructive, of the presence of the float in the water; and even assuming such notice, plaintiff failed to prove that defendants should have realized that it (the float) involved a risk to the patrons.

Considering the first point, the following quoted portions of the testimony of defendant, Robert Tucker, dispenses with this argument:

"Q. When the pool was cleaned, about July 21, what was done with the hose? A. The way we have done for years, we leave the hose on the bank and floats are put downstairs. Q. But at this time, it was your common practice to leave the hose and the float attached to it, right at the pool? A. Right. * * * Q. Since the accident where have you been keeping these two floats? A. At the same place they are supposed to be. Q. Beside the pool? A. Yes. * * * Q. Did you ever see one in the water? A. That is what I said, that could have happened two or three times. Q. But you said if you found them in the water you would then take them out and put them away? A. Yes, sir."

Karen's father testified:

"Q. Did you have any conversation with Robert Tucker? A. He was there just a few minutes, as I remember. He went over to the pool and took the floats out of the pool. Q. Who did that? A. Mr. Tucker. Q. Did he have any conversation with you? A. Yes, he said — it was three years ago I can't quote the exact words. Q. Just tell the conversation as you remember. A. He said, 'The kids are always taking the floats off the hose.' "

There was evidence that the elapsed time between Karen's first entry into the pool and the time of the accident was approximately fifteen minutes, and defend-

ants' counsel argues that this was insufficient time to give notice to defendants of its presence in the water.

However, from the quoted testimony of defendant Tucker, it is apparent that by leaving the cleaning equipment near the swimming pool defendants could reasonably anticipate that the floats would be detached and placed in the water *at any time.* Defendants cite and rely on *Webb v. Thomas,* 133 Colo. 458, 296 P. (2d) 1036, and other cases, to sustain their contention that they are not liable unless there is proof that they knew or should have known that the presence of the float in the water constituted a hazard to patrons of the pool. In the Webb case it is stated:

"While the proprietor of premises is not an insurer, nevertheless it is his duty to use reasonable care and be diligent in furnishing and maintaining the premises in a reasonably safe condition *for the purpose for which it is designed and to which it is adapted.*"

And further:

"It is to be noted that the comparative knowledge of the parties is the test of liability — that is to say, the knowledge of the defendant as opposed to the knowledge of the person injured. Two conditions must concur, if the possessor of the land is to be held liable: (1) a realization that the condition constitutes an unreasonable risk to the patron; and (2) the absence of reason to believe that the condition will be discovered by the patron or the risk realized by him. * * * "

In the Webb case the plaintiff sustained injuries when he dived into the shallow end of a pool. There, nothing the defendants did was remotely connected with plaintiff's injuries. In the instant case, Tucker admitted on cross-examination that the floats were not playthings furnished for the amusement of the patrons, but were part of the cleaning and maintenance equipment; he was fully cognizant of the size, weight and hardness of the float in question and was fully aware of the customary uses for which the floats were designed and adapted and

that they had, on other occasions, been detached and thrown into the pool. Karen, however, had no knowledge of the physical properties of the float prior to the accident, nor was it shown that she had the remotest idea of its normal use or of the danger of striking it. All she had observed was two or three boys playing with an unknown object in the pool without apparent harm.

Second. *Was there sufficient evidence to sustain the Court's finding that defendants' acts were the proximate cause of Karen's injuries?*

This question is answered in the affirmative. On this point counsel for defendants assert that the cause of Karen's injuries was the intervening act of the third person or persons who detached the floats from the vacuum and placed them in the water. The rule applicable is correctly stated in *Alden v. Watson,* 106 Colo. 103, 102 P. (2d) 479, as follows:

"Where the negligence of one person is concurrent with that of another and the concurring negligence of each produces a condition resulting in an injury to a third person, without negligence on his part, the third person may recover damages for the injury sustained by reason of the concurrent negligence of the two, without regard to whose negligence was the proximate cause of the injury."

See also 65 C.J.S., sec. 111 (e), p. 695; *Lakeside Park Company v. Wein,* 111 Colo. 322, 141 P. (2d) 171.

 Considering the circumstances in the case at bar we are persuaded that the conduct of defendants in permitting the float to be used in the pool, with knowledge of its character and weight, and that injury would likely result from its presence, was sufficient to support a finding of negligence and the proximate cause of the injury to Karen.

Third. *Was plaintiff guilty of contributory negligence?*

This question is answered in the negative. In *Matt*

*Skorey Packard Co. v. Canino,* 142 Colo. 411, 350 P. (2d) 1069, it is stated:

"The legal rule of conduct requires that the plaintiff, as well as the defendant, shall act as an ordinarily prudent person would do under like circumstances. In either case the act must be the proximate cause or one of the proximate causes of the injury, to charge the defendant with negligence or the plaintiff with contributory negligence."

██ Here there was no showing that any act or conduct on the part of Karen was such as would warrant a finding of fault for the resulting injury. We find no basis for the assertion that Karen, an 11-year-old girl, used other than that degree of care which ordinarily prudent children of similar age and like intelligence would be expected to use under like circumstances. *Lakeside Park Company v. Wein,* supra.

Counsel also cite *Gambardello v. H. J. Seiler Co.,* 335 Mass. 49, 138 N.E. (2d) 603. There the evidence revealed that plaintiff, without first looking, dived from a springboard and landed on a raft seven feet long and four feet wide. Clearly that case is not in point with the factual situation here.

Fourth. *Were defendants' exhibits improperly excluded from evidence?*

██ This question is answered in the negative. Defendants' Exhibits 2 and 3 were contained in the manufacturer's advertising pamphlet for swimming pools. The exhibits were two pictures of a permanent dividing line between shallow and deep water marked with floats kept permanently in place by a wire or rope. Defendants offered the exhibits to show the customary use of floats, which the court rejected as immaterial. We perceive no error.

The judgment is affirmed.

Mr. Justice Moore, Mr. Justice Knauss and Mr. Justice Frantz concur.