No. 19,401.

GARY ALAN REMLEY, MINOR, ET AL. *v.*
DON NEWTON, ET AL.
(364 P. [2d] 581)

Decided August 7, 1961.   Rehearing denied September 18, 1961.

Mr. KENNETH N. KRIPKE, Messrs. RYAN, SAYRE, MARTIN & HANSEN, for plaintiffs in error.

Mr. DARWIN D. COIT, Mr. JOHN E. WALBERG, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THIS is an action by Gary Alan Remley, a minor child, and his parents to recover damages arising out of personal injuries sustained by the child at a time when they were "paying guests" and "business invitees" at a summer resort operated by Don Newton and Helen Newton.

At the conclusion of the evidence offered by plaintiffs bearing on the question as to the liability of the Newtons, counsel for defendants moved for a directed verdict on the ground "that there has been positively no evidence in this case on the liability phase that would show any negligence whatever on the part of the defendants * * *." This motion was granted by the trial court and judgment entered dismissing the action. The Remleys seek reversal of the judgment by writ of error.

The substance of the evidence offered by plaintiffs was that Mr. and Mrs. Remley, who resided in Missouri, corresponded with the Newtons with a view to spending a vacation at their mountain resort. Literature was forwarded to the Remleys in which it was asserted that there would be adequate supervision over the children playing at the resort; that on the children's playground defendants maintained a "makeshift" tether ball pole consisting of a tall metal pole at the upper end of which was fastened a chain or rope, on the lower end of which an inflated ball was attached; that said metal pole was

not anchored to the ground but was held upright by an iron gear wheel in the center of which the pole was inserted; that the gear wheel with metal pole and ball thus attached was movable; that on the morning of August 8, 1956, the Remley family were paying guests at the premises operated by defendants; that they went to breakfast after which Mr. and Mrs. Remley returned to their cabin which was about seventy-five feet from the place where the tether ball pole was standing on the playground; that said pole was then upright; that a few moments later they heard cries from the playground, rushed out and found their son Gary, six years of age, lying on the ground in an unconscious condition with his head and face covered with blood, and badly injured; that his head was a few inches from the tether ball pole which had fallen over and was lying on the ground.

In support of their claim the plaintiffs called one Walter H. Weber who testified that he was an employee of School District No. 3 which includes practically all of the schools in the city of Boulder; that it was his job to install and maintain playground equipment, including tether ball equipment, on the school grounds of District No. 3, and had been so engaged for about five years during which period he had placed fifteen or twenty tether ball poles.

At this point, on objection of counsel for defendants and after offer of proof by plaintiffs, the court refused to allow the witness to testify further. Plaintiffs' counsel explained that he proposed to show that both the public schools and the guest ranch provided playgrounds and had children's programs; that there is a proper way to install tether ball equipment and that there is a standard for such installations which is generally maintained; that the testimony of Mr. Weber would establish that there was a safe way to install such equipment so that a child would not get hurt and so that there would be no danger of the pole toppling over. Plaintiffs further contended that they should be permitted to present evi-

dence as to the degree of care required in installing and maintaining such equipment. They assert that the trial court erred in refusing to admit the proffered testimony of the witness Weber.

The motion for new trial, which was filed and overruled, contained nine grounds of alleged error and in substance states the grounds relied on here for reversal, and may be epitomized as follows:

The question of whether the defendant innkeepers had negligently breached their duty to keep the premises and equipment in a condition reasonably safe for the use of guests was for the jury, and it was error to direct a verdict for defendants.

In directing the jury to return a verdict in favor of defendants, the trial court commented, inter alia, as follows:

"Every damage case such as this one comes in two parts. Each portion can be appealed separately. The two issues involved are firstly, liability, and second, damages. We are concerned only at the moment with the issue of liability. The defendants have moved for a directed verdict for the failure of the plaintiff to prove any negligence, or to prove that the tether-ball standard or pole was a nuisance as alleged in one claim for relief in the complaint. The evidence shows that the plaintiffs went to the defendants' Guest Ranch, that there was a tether-ball standard, shown by Exhibit C, on the Ranch. The evidence further shows that on the morning of August 8th, 1956, the plaintiff Gary Remley was found lying in an unconscious condition alongside the pole of the tether-ball. Now there is no evidence to show that the pole was what hit the plaintiff Gary Alan Remley, nor was there any evidence to show that if it had, and assuming for a moment that the pole did hit him, that it was because of any negligence of the defendants. There is no evidence to show that the tether-ball and standard were in themselves a nuisance, or an attractive nuisance, or any form of nuisance, and the evidence shows at most

that some accident occurred, and that Gary Remley was injured. Upon that basis, I was reminded of the case of the City of Grand Junction versus Smith [Lashmett] in 126 Colo. 256, where a six year old child, the child was six years, nine months, was injured, and in that case as counsel are aware, the contentions made was that the city was negligent in using oil-burning fire-pots, and that also another claim was made upon the theory of attractive nuisance, and the court in that case reversed the judgment of the trial court and stated at page 260: 'At the outset it is well to recall that negligence is never presumed, but must be proven by a preponderance of the evidence. Proof of the happening of an accident, or the incurrence of an injury alone raises no inference of negligence' and the case is so similar in so many respects to the case at bar, that I think that only one thing can be done, and that is to grant the defendants' motion. Accordingly it will be ordered that the defendants' motion for a directed verdict be granted."

While it is true that "proof of the happening of an accident, or the incurrence of an injury alone raises no inference of negligence," it is equally true that negligence may be established by the facts and circumstances surrounding an accident. In the instant case the evidence offered stood undisputed in any way at the time the court took the matter from the jury. If upon these undisputed facts reasonable and fair-minded men might draw different conclusions or inferences, then the question of negligence was for determination by the jury. *Parker v. City and County of Denver*, 128 Colo. 355, 262 P. (2d) 553; *Smith v. Gvirtzman*, 109 Colo. 314, 124 P. (2d) 926.

We quote the following pertinent language from 20 Am. Jur., p. 1043, §1189:

"The rule as to circumstantial evidence in a civil case is that a party will prevail if the preponderance of the evidence is in his favor. Where two equally plausible

conclusions are deducible from the circumstances, the jury is left to decide which shall be adopted."

This court has on numerous occasions applied the rules governing the liability of the owner of business premises for bodily harm caused to business invitees resulting from unsafe conditions or devices upon the premises. *Tucker v. Dixon,* 144 Colo. 79, 355 P. (2d) 79; *Peters v. Schillig-Scott Lumber Company,* 107 Colo. 310, 111 P. (2d) 898. In the latter case the court quoted Restatement of the Law — Torts and Negligence, section 343, as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care.

"(i) to make the condition reasonably safe or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

We hold that the trial court erred in excluding the evidence offered by the witness Weber. If, as contended by counsel for plaintiffs, there is a safe and proper way to install tether ball equipment which is uniformly maintained on children's playgrounds, we see no reason why testimony establishing that fact should be excluded. Nor do we perceive a distinction between a playground at a school and a playground at a vacation resort. A standard of safety in the installation and maintenance of such devices for the use of children does not depend upon whether it is located in a school playground

or on the premises of an innkeeper for the use of his guests.

The judgment is reversed.

MR. JUSTICE DAY and MR. JUSTICE DOYLE concur.