Helen BARTON, Appellant,

v.

NORTH SLOPE BOROUGH SCHOOL DISTRICT, Appellee.

No. S–14086.

Supreme Court of Alaska.

Jan. 20, 2012.

Jeffrey J. Barber, Barber & Sims, LLC, Anchorage, for Appellant.

Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

On August 17, 2007, Helen Barton was injured while watching a high school football game in Barrow when at least one player ran out of bounds during a play and collided with Barton, breaking her leg. Barton sued the North Slope Borough School District, alleging in part that the football field had not been designed or built with a proper "run-off" area along the sidelines and that spectators had improperly been allowed to stand in the run-off area during the August 17 game. Barton retained expert Juliet Vong, a landscape architect, who proposed to testify that she used a particular manual in designing sports fields "to help ensure the appropriate dimensions and design criteria are met for a given sport and level of play." The District filed a motion in limine to exclude Vong's testimony because it did not provide an admissible expert opinion. The superior court agreed with the District and excluded Vong's report and testimony. At a jury trial in August 2010, the District was found not negligent. Barton appeals, arguing that the superior court should not have excluded Vong's testimony and that doing so was prejudicial to Barton's case. We conclude that although it was error to exclude Vong's testimony, the error was harmless.

## II. FACTS AND PROCEEDINGS

In the summer of 2007, an Astroturf field was constructed for the Barrow High School football team. The field was a regulation high school football field, measuring 120 yards long (including end zones) by about 160 feet wide. A "skirt" of Astroturf approximately 10–12 feet wide bordered the field along all of the sidelines, and the field was surrounded by orange plastic construction fencing in August 2007.

On August 17, 2007, the Barrow football team played its first game on the new field, and over 3,000 people attended. According

to the District, spectators were seated in bleachers, standing near and away from the sidelines, and in nearby buses. Helen Barton, an elderly spectator, alleged that she had to watch the football game from the sidelines of the field because there was inadequate seating elsewhere. At one point during the game, several football players went out-of-bounds near the 15– or 20–yard line and at least one of them collided with Barton, knocking her to the ground. Barton suffered a broken left leg and also claimed injuries to her left knee, back, and hip.

Barton sued the North Slope Borough School District on March 30, 2009, alleging that the District had negligently designed, "set up," operated, and supervised the Barrow High School football field, and that the District had failed to provide adequate barriers or adequate warnings during the August 17 football game. Barton sought damages for the injuries she suffered as a result of the collision. The District answered on June 8 and filed a motion for summary judgment on December 31, 2009, arguing that it "owed no duty to protect Barton, a spectator, from the open and obvious risk of being struck by players while standing near the sidelines during a football game." Barton responded on January 21, 2010. Summary judgment was denied on April 5, with the superior court noting that "Alaska case law does not specifically address the liability of landowners to spectators of sporting events."

In advance of trial, Barton disclosed two retained experts: Michael Russell, a "safety expert," and Juliet Vong, a "landscape architect expected to testify about design of the high[ ]school football field." Barton also disclosed an "expert report" from Vong, in the form of a letter from Vong to Barton's counsel, on June 2, 2010. Attached to Vong's letter was an excerpt from a publication entitled *Sports Fields: A Manual for Design, Construction and Maintenance* (*Sports Fields* or the manual). The letter stated:

This letter is in response to your request for information on the design of football fields. As a licensed landscape architect in the states of Washington, Oregon, Idaho and Montana, I have participated in the design of a wide variety of outdoor spaces, including athletic fields, over the last thirteen years. A copy of my resume is attached to this letter. I use [*Sports Fields* ] as a reference when designing athletic fields to help ensure the appropriate dimensions and design criteria are met for a given sport and level of play. In this manual, the section titled "Football and Rugby Fields" states specific Design Criteria for new constructions such as slope, irrigation and drainage, turfgrass selection, maintenance[,] and field dimensions, including for High School play. The relevant chapter from the manual is attached to this letter.

The *Sports Fields* excerpt included the following language:

The violent, high-speed collisions characteristic of adult football raise several important safety concerns. First of all, because of the popularity of the sport with spectators, many fields have traditionally been built with some form of barrier between the playing area and the grandstands. If such barriers are necessary, they should be placed well back from the sidelines, at least 20 to 25 feet away. Even at that distance, athletes running across the sidelines at top speed on wet turf may be unable to stop before reaching the barrier, so player safety should be a major concern in barrier design.

Barton filed a final witness list over a month after disclosing Vong's expert report, and it included two relevant experts: Russell and Vong.

The District filed a motion in limine to exclude Vong's report and testimony, contending that Vong offered no expert opinion that would assist the jury and that her expert report failed to comply with the requirements of Alaska Civil Rule 26(a)(2)(B). The District argued that Vong "simply states that when she designs a football field she uses a particular book which has some design criteria," contending that this was not an admissible expert opinion. In addition, the District stated that Vong's letter did not meet the criteria for an expert report under Civil Rule 26(a)(2)(B) because it did not contain an expert opinion nor the "data or other information" used to form that opinion. The District

contended that "[b]ecause no opinions are expressed by [Vong], her testimony is irrelevant."

Barton responded, maintaining that Vong had offered an opinion—that *Sports Fields* "is a reasonably relied upon authority"—and would testify "about the standard for design and the reasons for those standards as described ... [in] the manual." In this way, Barton explained, "Vong's expert testimony would be very similar to the court taking judicial notice of the manual." Barton also contended that Vong's letter was a sufficient expert report, explaining that "because [Vong] will be used for the limited purpose of identifying the manual ... an in-depth report would have been wasteful and unnecessary."

The District replied, responding that if Vong intended to testify that *Sports Fields* was a learned treatise or an industry standard, Vong's letter had not expressed those opinions and that Vong could not add those opinions after the deadline for filing expert reports had passed.

The superior court granted the District's motion to exclude Vong's report and testimony, concluding that it was not admissible expert testimony under Alaska Evidence Rule 702. The superior court noted that Vong "does not articulate that [*Sports Fields*] is the industry standard for construction of athletic fields, nor does her report give any guidance on how she would apply the manual to the facts of this case in order to assist the jury." Therefore, the superior court determined, "the relevance of [Vong's] testimony is low." The superior court also explained that while statements from learned treatises may sometimes be read by experts into the record as a hearsay exception under Evidence Rule 803(18), generally "learned treatises are not admissible substantive evidence" because "there is a need for the expert to guide the jury on the use of the treatise." The superior court found that neither Vong's report nor Bar-

ton's intended use of *Sports Fields* provided such guidance.

Barton filed a motion for reconsideration. Barton argued that "[a] central issue for the jury to consider will be the appropriateness of the dimensions of the area between the sidelines and the barrier as well as the exclusion of spectators ... from the area." Because of this, Barton reasoned, Vong's expert report—which attached the "football field chapter" of *Sports Fields* and "indicated [Vong's] belief that the dimensions and reasons for those dimensions identified in the chapter were appropriate dimensions for designing a high school football field"—contained an opinion that was "directly relevant and helpful for the jury in understanding the safety of the ... District's design and dimensions for the barrier at issue and the adequacy or inadequacy of the ... District's policy regarding spectators in the area between the sidelines and the barrier." Barton argued that "[a]pplying the [m]anual's dimensions to a high school field is an important, relevant opinion" and that Vong should be permitted to provide that opinion.

The superior court held a pre-trial conference. During the conference, Barton's counsel asked the court to take judicial notice of the subsection of *Sports Fields* attached to Vong's letter. The superior court declined to do so, and it denied Barton's motion for reconsideration without comment that same day. The case proceeded to a jury trial. The jury found that the District was not liable. Barton appeals from the final judgment in favor of the District.

## III. STANDARD OF REVIEW

■ We review the superior court's decision to admit or exclude evidence, including expert witness testimony, for an abuse of discretion.[1] "An abuse of discretion exists when we are left with a definite and firm conviction that an error has been made."[2] An erroneous decision regarding admissibility will only be reversed "if it affected the substantial rights of a party."[3] Where the

1. *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010).

2. *Marsingill v. O'Malley*, 128 P.3d 151, 155 (Alaska 2006).

3. *Cartee*, 239 P.3d at 721.

admissibility of expert testimony turns on a question of law, such as the "correct scope or interpretation of a rule of evidence," we apply our "independent judgment, adopting the rule most persuasive in light of reason, precedent and policy." [4]

## IV. DISCUSSION

■ Barton makes a single argument on appeal—that the superior court's exclusion of Vong's testimony was an abuse of discretion.[5]

### A. Vong's Testimony Could Have Assisted The Jury Under Alaska Rule Of Evidence 702.

■ Alaska Rule of Evidence 702(a) controls the admissibility of expert testimony.[6] Rule 702(a) provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." [7] We confirmed long ago that "the standard for admission of expert testimony in Alaska is whether the testimony would appreciably assist the trier of fact." [8] "As a general rule, the trial judge retains 'wide latitude' in deciding whether to admit the testimony of an expert witness." [9]

■ Expert testimony may be based on either: (1) technical or scientific research and testing; or (2) practical experience in the relevant field.[10] We held in *Marron v. Stromstad* that the second category of expert testimony does not have to meet the heightened requirements outlined by the United States Supreme Court in *Kumho Tire v. Carmichael*,[11] noting Alaska's "liberal standard favoring the admissibility of expert testimony . . . to increase the information avail-

---

**4.** *City of Bethel v. Peters*, 97 P.3d 822, 825 (Alaska 2004) (quoting *State v. Coon*, 974 P.2d 386, 389 (Alaska 1999)).

**5.** The District also alleged in the superior court, and repeats on appeal, that Vong's letter failed to meet the Civil Rule 26(a)(2)(B) criteria because it did not contain a statement of opinions to be expressed. Civil Rule 26(a)(2)(B) directs that the pre-trial disclosure of expert witnesses be accompanied by an expert report prepared by the witness. The report must contain, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor [and] the data or other information considered by the witness in forming the opinions." The District urges that the superior court "properly excluded [Vong's] testimony from trial for non-compliance with the discovery rules and the pre-trial order."

While the District is correct that a trial court has discretion to exclude evidence "where there has been non-compliance with discovery or the pre-trial order," there is no indication in the superior court's order that its decision to exclude Vong's testimony was in response to any non-compliance with discovery procedures. Rather, the superior court based its ruling on its interpretation of Evidence Rules 702(a) and 803(18) and on relevance grounds. Because the record shows that the superior court did not exclude Vong's testimony due to non-compliance with discovery requirements, there is no basis for us to review the superior court's order for abuse of discretion on this ground.

**6.** *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1039 (Alaska 2002).

**7.** Alaska R. Evid. 702(a).

**8.** *INA Life Ins. Co. v. Brundin*, 533 P.2d 236, 243 (Alaska 1975); *see also Getchell v. Lodge*, 65 P.3d 50, 56 (Alaska 2003) ("To be admissible[,] expert opinion testimony must be helpful to the jury."); *Osborne v. Hurst*, 947 P.2d 1356, 1362 (Alaska 1997) ("[t]he true criterion [for determining whether a person qualifies as an expert witness] is whether the jury can receive appreciable help from this particular person on this particular subject") (quoting *Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965)); *cf.* DAVID H. KAYE, DAVID E. BERNSTEIN & JENNIFER L. MNOOKIN, THE NEW WIGMORE: A TREATISE ON EVIDENCE. EXPERT EVIDENCE § 2.1.2 (2d ed.2010) (explaining that Federal Rule of Evidence 702, which parallels Alaska Evidence Rule 702, "requires only that expert testimony be helpful to the jury. Expert testimony can be helpful to the jury even if the jury is capable of resolving the relevant issue on its own, so long as the testimony may advance the jury's understanding to any degree.") (citation omitted).

**9.** *Barrett v. Era Aviation, Inc.*, 996 P.2d 101, 103 (Alaska 2000) (quoting *Ferrell v. Baxter*, 484 P.2d 250, 267 (Alaska 1971)).

**10.** *Marsingill v. O'Malley*, 128 P.3d 151, 159 (Alaska 2006).

**11.** *Marron v. Stromstad*, 123 P.3d 992, 1007 (Alaska 2005) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

able to the fact-finder."[12] In that case we nevertheless emphasized the importance of ensuring the reliability of non-technical, experience-based expert testimony by requiring such testimony to meet the standards outlined in other evidentiary rules.[13] For example, this type of expert evidence must be presented by an expert who is properly qualified "by knowledge, skill, experience, training, or education,"[14] and the "facts or data in the particular case upon which an expert bases an opinion or inference … must be of a type reasonably relied upon by experts in the particular field."[15] And in all instances, evidence in the form of expert testimony must be relevant[16] or it is inadmissible,[17] and it may be excluded even if it is relevant "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[18]

We have previously determined that expert witness testimony is admissible in the context of determining negligence or other breaches of a particular duty of care.[19] And other courts have allowed experts to testify, and have relied on expert opinions, in a variety of negligence cases brought by spectators injured during athletic events.[20] For example, an Illinois appellate court upheld a trial court's admission of a "safety consultant's" expert testimony in a negligence suit brought by a spectator hit in the face with a foul ball at a baseball game.[21] Among other things, the expert gave the opinion that seats in the "area behind home plate" should be protected because they were in "the most dangerous area of the ballpark" and that spectators in those seats could feasibly be protected by a screen of particular dimensions; the expert testified that his opinion was based on "various publications" along

12. *Id.* at 1005.

13. *Id.* at 1007.

14. Alaska R. Evid. 702(a).

15. Alaska R. Evid. 703.

16. Alaska R. Evid. 401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

17. Alaska R. Evid. 402 (providing that "[e]vidence which is not relevant is not admissible").

18. Alaska R. Evid. 403.

19. *See, e.g., Ayuluk v. Red Oaks Assisted Living, Inc.,* 201 P.3d 1183, 1192–94 (Alaska 2009) (holding that a trial court abused its discretion by excluding the testimony of an expert witness where the testimony would have been relevant to show that the defendant breached a duty of care); *Getchell v. Lodge,* 65 P.3d 50, 56 (Alaska 2003) (upholding the admissibility of a police officer's testimony implying that a driver had not been negligent in a motor vehicle accident where she skidded to avoid a moose); *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1039 (Alaska 2002) (determining that the trial court erroneously excluded expert witness testimony regarding the "appropriate standard of care for a heating service professional"); *Wilson v. State,* 669 P.2d 1292, 1296–97 (Alaska 1983) (concluding that it was not error to allow an expert to state an

opinion that an OSHA inspector was negligent in conducting an inspection of a drilling platform).

20. *See, e.g., Thurman v. Clune,* 51 Cal.App.2d 505, 125 P.2d 59, 60 (1942) ("[T]he opinion of experts relative to the proper safeguards to be taken in the construction of ice hockey rinks is evidence which is admissible … on the query of whether defendant in a particular instance has properly safeguarded the ice hockey rink in question."); *Remley v. Newton,* 147 Colo. 401, 364 P.2d 581, 583 (1961) (holding that the trial court erred by excluding expert testimony regarding the "safe and proper way to install tether ball equipment" in a negligence action); *Benejam v. Detroit Tigers, Inc.,* 246 Mich.App. 645, 635 N.W.2d 219, 224 (2001) (noting that "[p]laintiff's expert testified that, on the basis of his review of accidents occurring over time in the spectator stands between first base and third base, reasonable safety precautions would include screening in that entire area"); *Perry v. Seattle Sch. Dist. No. 1,* 66 Wash.2d 800, 405 P.2d 589, 592 (1965) (citing expert testimony from a football coach that "five yards back from the line marking the playing field would have been a safer place for spectators to stand"); *Taylor v. Baseball Club of Seattle, L.P.,* 132 Wash.App. 32, 130 P.3d 835, 839–40 (2006) (affirming the admission of a professional pitching coach's testimony in a negligence action brought by a spectator injured by an errant warm-up pitch because the coach was "highly qualified to address why and how the athletes prepare for games").

21. *Yates v. Chicago Nat'l League Ball Club, Inc.,* 230 Ill.App.3d 472, 172 Ill.Dec. 209, 595 N.E.2d 570, 580 (1992), *superseded by statute on other grounds by* 745 Ill. Comp. Stat. Ann. 38/10 (West 1996).

with "years of reading documentation on safety, design and operation of baseball stadiums and fields."[22] The defendant moved to exclude the expert's testimony because the spectator "never established that the documents and data upon which [the expert] relied were of a type reasonably relied upon by experts."[23] The appellate court disagreed, explaining that a trial court "should liberally allow the expert to determine the materials upon which experts in his or her field may rely in rendering an opinion" and that it "is then the opposing party's responsibility to challenge the basis of the expert's opinion, with the weight of the opinion ultimately left to the trier of fact."[24] In some instances, however, courts in other jurisdictions have disallowed expert testimony in factually similar cases where the testimony was deemed not helpful to the jury[25] or conclusory.[26]

Barton argues that the "primary issue for the jury in determining [the District's] negligence" was "[w]hether the [ ] District should have kept a run-off area clear of spectators." Barton maintains that Vong would have testified: (1) that *Sports Fields* was a reliable authority; (2) that *Sports Fields's* prescribed dimensions for a run-off area were applicable to high school football fields; and (3) that subsection 12.2b of *Sports Fields*, entitled *Safety Issues*, identified the appropriate dimensions and explained the purposes of a run-off area. Barton emphasizes the importance of "[t]he opinion of a landscape architect with experience designing sports fields that the Manual dimensions were applicable for a high school field" and adds that Vong's testimony "would have educated the jurors about the known risk of football players running out of bounds and colliding with objects, including spectators, allowed too close to the side lines." Barton maintains that "[d]eficiencies in the basis of [Vong's] opinion should have [gone] to weight and not admissibility."

The superior court determined that Vong's proposed testimony was of low relevance because Vong did not state in her report that "the manual was the industry standard for construction of athletic fields" and did not explain how she would have used *Sports Fields* in this case. The District urges us to uphold the superior court's decision, arguing that Vong did not state "that the Manual represents the applicable standard of care in the industry," and that Vong would not have "offered any opinions regarding the District's conduct [or] whether or not the Barrow football field complied with the Manual's design standards." The District asserts that "the problem with [Vong's] proposed testimony was that she failed to offer any opinions whatsoever, deficient or otherwise."

We disagree. Rule 702 reflects Alaska's liberal standards for allowing evidence that might appreciably help the jury make a decision. The rule allows experts to testify "in the form of an opinion or otherwise."[27] The commentary on Rule 702 explains that "[b]y allowing testimony 'in the form of an opinion or otherwise,' the rule allows an expert to give testimony in the form of a dissertation on a given topic thereby allowing ... trier[s] of fact to draw [their] own inferences by applying the specialized knowledge to the facts of the case at hand."[28]

In Barton's opposition to the District's motion in limine to exclude Vong's testimony, Barton stated that Vong's "role is to relate

**22.** *Id.* at 575.

**23.** *Id.* at 579.

**24.** *Id.* at 580.

**25.** *See Vega v. City of Pompano Beach,* 551 So.2d 594, 596–97 (Fla.App.1989) (affirming the trial court's exclusion of a civil engineer's expert testimony as to the existence of a hazardous condition because it would have been within the common knowledge of the jury).

**26.** *See Honohan v. Turrone,* 297 A.D.2d 705, 706, 747 N.Y.S.2d 543 (2002) (upholding summary judgment when presented with an expert's "conclusory affidavit" stating that it was not within the "custom and practice to be followed regarding youth soccer leagues" to allow players to warm up on the sidelines near spectators because the expert "did not cite any recognized standard adopted by any specific organization or governmental entity nor specify where the purported 'custom and practice' was in fact observed").

**27.** Alaska R. Evid. 702(a).

**28.** Commentary Alaska E.R. 702.

the contents of page 252, subchapter 12.2b of the manual identified in the expert disclosure." Barton added that Vong was "not expected to provide any opinions regarding the conduct in this case or whether she believes the conduct complied with the standard." But even this limited testimony falls squarely within the commentary's description of "a dissertation on a given topic ... allowing the trier of fact to draw his own inferences." By acquainting the jury with the standards set out in *Sports Fields*, Vong could have appreciably assisted the trier of fact by presenting the jury with information from which it could have drawn its own inferences. We therefore conclude that it was error to exclude Vong's testimony. We next address whether that error was harmless.

## B. Excluding Vong's Testimony Was Harmless Error.

 When the trial court has erroneously excluded evidence, a party must show that the error was harmful or prejudicial before we will reverse the trial court.[29] "The test for determining whether an error was harmless is 'whether on the whole record the error would have had a substantial influence on the verdict of a jury of reasonable lay[people].' "[30] Put another way, the erroneous exclusion of evidence is prejudicial if we "cannot 'say with fair assurance, after stripping the erroneous action from the entire evidence, that the jury was not substantially swayed or affected by the error.' "[31] Some factors relevant to this inquiry are "the relative amount of time at trial devoted to the evidence and whether the ... evidence was cumulative and largely replicated other ...

evidence."[32] Error in excluding evidence is also harmless where it would be more damaging than helpful to the party that wanted to introduce it.[33] In this case, it was harmless error to exclude Vong's testimony.

Barton argues that her case "suffered immeasurably because of the preclusion of her landscape architect."[34] Barton notes that the District was permitted to call witnesses who "g[a]ve opinions about the placement of [the] barrier around the football field and ... explain[ed] why it was okay for spectators to stand next to the sidelines." Barton asserts that Vong would have countered this testimony by identifying the *Sports Fields* manual, by applying the manual's prescribed dimensions as appropriate for a high school football field, and by "present[ing] the material with persuasive authority to the jury." Barton also maintains that "[t]he trial court's exclusion of [Vong's testimony] detrimentally affected [Barton's] ability to convince the jury that the ... District was careless to allow spectators in the run-off area." The District counters that Vong's testimony would have been cumulative of the testimony offered by Barton's other expert witness, Michael Russell. It also argues that Vong's testimony would not have helped Barton, and may even have hurt her, because Russell "conceded ... that the distance between the sidelines and the orange construction fencing barrier was 30 feet and thus, the Barrow football field actually complied with the Manual's proposed run-off area dimensions for professional football fields."

The exclusion of Vong left Russell as Barton's only expert. At trial, Barton tried, with limited success, to elicit from Russell an ex-

---

29. *Noffke v. Perez*, 178 P.3d 1141, 1147 (Alaska 2008).

30. *Id.* at 1147–48 (quoting *Dalkovski v. Glad*, 774 P.2d 202, 207 (Alaska 1989)).

31. *Liimatta v. Vest*, 45 P.3d 310, 317 (Alaska 2002) (quoting *Adkins v. Lester*, 530 P.2d 11, 18 (Alaska 1974)).

32. *Municipality of Anchorage v. Devon*, 124 P.3d 424, 432 (Alaska 2005) (citation omitted).

33. *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1039–40 (Alaska 2002).

34. Barton originally made this argument in the context of a slightly different contention—that "[p]recluding evidence on a central issue is like imposing a liability or litigation ending sanction." But the legal authority Barton cites discusses a trial court imposing sanctions for discovery violations and is not applicable here. *See Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1169 (Alaska 1998) ("However, we have repeatedly held that the trial court's discretion [to choose a particular sanction for a discovery violation] is limited when the effect of the sanction it selects is to ... preclude evidence on a central issue...."). Vong's testimony was not excluded by the superior court as a discovery sanction.

planation of the importance of run-off areas and to establish *Sports Fields* as a reliable authority on the subject. In response to questioning by Barton's counsel, Russell stated that football fields included run-off areas to prevent spectators from getting injured. He said that the run-off areas in professional football fields, "I guess, are about 30 feet wide." Barton's counsel then asked Russell what material he had reviewed in forming his opinion, and Russell replied that he had done extensive internet research. Counsel asked whether Russell had reviewed any manuals, to which Russell replied that he had reviewed "a couple of pages from an architectural manual." When Russell was unable to remember the name of that manual, the District's counsel intervened, saying, "We'll allow counsel to read the name to him." Russell listed *Sports Fields* as among the sources he consulted. Barton's counsel then asked no questions about *Sports Fields*, such as what dimensions the manual suggested, whether Russell agreed with those dimensions, whether *Sports Fields* was a reliable authority, or whether the dimensions prescribed by *Sports Fields* were applicable to high school football fields. Although he did not attribute his 30–foot estimate to *Sports Fields*, on cross-examination the District's counsel asked, "[Y]ou testified under oath to this jury that professional field runoff distance is 25 to 30 feet, did you not?" Russell replied, "That's what the manual said, yes."

To the extent that Russell's testimony did not overlap with Vong's proposed testimony, Barton's counsel had an opportunity to ask more tailored questions to elicit the desired testimony about the required dimensions of the run-off area. Barton argues that Vong would have testified (1) that *Sports Fields* was a reliable authority; (2) that *Sports*

*Fields's* proscribed dimensions for a run-off area were applicable to high school football fields; and (3) that subsection 12.2b of *Sports Fields*, entitled *Safety Issues*, identified the appropriate dimensions and explained the purposes of a run-off area. Russell did say that he used *Sports Fields*, although he may not have featured it as prominently in his testimony as Vong would have. Barton's counsel also failed to use *Sports Fields* while cross-examining the District's expert witness. While Barton's counsel never asked Russell whether these dimensions were appropriate for high school football, Russell did say "if you put people on the sidelines and you've got a team of 12 people at 180 ... pounds apiece, it's—it's like a moving wall."

More importantly, the District's attorney acknowledged that professional fields use a 25– to 30–foot run-off area, both in cross-examination and in closing.[35] Although Vong's proposed testimony may have overlapped to some extent with Russell's testimony, we have noted that "the mere fact that another witness has already testified as to a certain issue does not foreclose a litigant's right to introduce substantiating testimony. Juries may find one witness more compelling than another, or they may attribute greater weight to a finding if more than one expert reaches the same conclusion."[36] But the burden is on the party challenging exclusion to show prejudice.[37] And even if Vong's testimony would have been more credible than Russell's, the exclusion of Vong's testimony was harmless because the District never challenged that a 25– to 30–foot run-off area was considered the standard. Moreover, the District's counsel repeatedly mentioned the 25– to 30–foot figure, never challenging it,[38] but instead arguing that the

**35.** *Sports Fields* actually gave 20 to 25 feet as the appropriate dimensions.

**36.** *Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.,* 822 P.2d 925, 932–33 (Alaska 1991), *superseded by statute on other grounds,* Tort Reform Act of 1986, Ch. 139, § 1, SLA 1986, *as recognized by Alaska Gen. Alarm, Inc. v. Grinnell,* 1 P.3d 98, 105 (Alaska 2000).

**37.** *Jones v. State, Dep't of Corr.,* 125 P.3d 343, 347 n. 7 (Alaska 2005).

**38.** In its closing, the District, without challenging the 25 to 30 feet as a general matter, did challenge the runoff as applied to Barrow, saying that while such safety measures were appropriate for Anchorage, they had no place in rural communities where "[w]e like to have a little freedom ... and [if] you have to stand way back, you've kind of taken a little—the fun out of it." But presumably nothing Vong would have said would have contradicted the District's argument on this point.

District's field met that standard. What the two sides chiefly disputed was not whether 25 feet was distance enough, but instead whether the District had invited people closer to the field than that. Vong's testimony would not have helped the jury answer that question. We therefore conclude that it was harmless error for the superior court to exclude Vong's testimony.[39]

## V. CONCLUSION

For the reasons described above, we AFFIRM the superior court's entry of judgment for the District.

---

**39.** The District arguably made an issue of Vong's absence when its attorney pointed out in his closing argument that Russell "didn't even show you, tell you, or have read to you the section of the book that he referred to to find out that the distance from the sideline to the fence is supposed to be 20 to 25 feet." Vong's proposed testimony would have put this directly before the jury. But again, this recommended dimension was not disputed by the District.